STATE OF NEBRASKA, APPELLEE, V.
DAVID STRANGHOENER, APPELLANT.

304 N.W.2d 679

Filed April 17, 1981.   No. 43556.

Michael N. Schirber for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

David Stranghoener, the defendant and appellant herein, appeals to this court from his sentence by the District Court of Sarpy County, Nebraska, to a term of 20 years' imprisonment, stemming from his conviction in that court of second degree murder. We affirm.

By way of factual background, as reflected in the

preliminary hearing and the deposition of Charles McGee, received in evidence in this case, Stranghoener resided with his wife, Polly Stranghoener, in a house located in LaVista, Nebraska. Also residing at the Stranghoener house were Charles McGee, Dennis Paulson, and Laureen Leander, codefendants in the cause below. It appears that these individuals comprised a social "family," with Dennis Paulson as head of the family. One additional member of this family was the victim, Jim Goslee. However, it appears that by June 4, 1979, Paulson, McGee, and the defendant had met and determined that Goslee was to be "eliminated" from the family.

On June 5, 1979, the parties met at the Stranghoener house for a party, which was attended by two additional codefendants in this matter, Darrell Thomas and Michael Meegan. At this party, the codefendants were made aware of the fact that Goslee would be killed that evening. The record indicates that alcohol and various drugs were being consumed by the family members, and that on at least one occasion the victim was given whiskey which had been drugged. At some time during the evening, several of the codefendants proceeded to a basement recreation room with the victim, while Michael Meegan, Charles McGee, and the defendant loaded a rifle in an upstairs bedroom. Before they returned to the basement, Meegan and McGee went outside the house and decided that McGee would shoot Goslee. It was determined Meegan would hand the rifle owned and provided by Stranghoener to McGee upon hearing the code word "execute." McGee returned to the basement, turned up a stereo, and gave the code word. Meegan stepped down into the basement and handed the rifle to McGee, who in turn shot Goslee. McGee later testified at the preliminary hearing that the rifle was an automatic weapon, and he fired the weapon until the gun was empty.

After the shooting had taken place, the victim's

body and clothes were searched, and his social security card, comb, and a note pad were destroyed. At 10 p.m., the body was wrapped up in a sheet and a quilt blanket which was taken from one of the defendant's couches. McGee, Meegan, Thomas, and Paulson wrapped the body and placed it into the trunk of a car; and then, in company with the defendant, McGee, Meegan, and Thomas drove over to Iowa, where the body was thrown into a creek bed. The body was subsequently discovered on June 18, 1979.

The defendant was originally charged with first degree murder in an information filed on June 25, 1979. This charge was subsequently amended to second degree murder pursuant to a plea bargain entered between the defendant and the State. The defendant pled guilty to the amended charge before the trial court on January 14, 1980.

On June 3, 1980, a sentencing proceeding was held before the trial court, at which time the court made both the defendant's presentence report and the presentence reports of each of his codefendants a part of the record. When the defendant was asked if he knew of any reason why the court should not then impose sentence, he responded: "No." However, counsel for the defendant asked to be "made aware" of any recommendations which the court had received from the probation officer. To this request, the court responded: "I have no information other than what is contained in the presentence investigation. Any recommendation as to whether there was incarceration or probation by Mr. Hartzell [the probation officer] was done solely as my agent, and you will not interview or cross-examine Mr. Hartzell, nor will I make it available to you any more than I would take the witness stand and let you know my particular deliberations that have gone into or made up a sentence that I impose. . . . If there are other factual matters that he put in the presentence investigation that you feel should be contradicted in some manner, or that he was

in error in placing them in, certainly you have the opportunity to rebut anything that's contained in the presentence investigation. . . . You're simply not going to question him or elicit information from him concerning private conversations or communications he's had as my particular agent any more than you would a law clerk." The defendant was subsequently sentenced to a term of 20 years' imprisonment at the Nebraska Penal and Correctional Complex, with credit granted for 1 year spent in the county jail while awaiting the disposition of this case.

Stranghoener has appealed to this court, alleging five errors on the part of the trial court. However, in his brief on appeal, only two of the assigned errors are discussed. It is elementary that consideration of a cause on appeal to this court is limited to errors assigned and discussed. *McClellan v. Dobberstein,* 189 Neb. 669, 204 N.W.2d 559 (1973); Neb. Ct. R. 8.a.2.(3). The defendant contends that the trial court erred: (1) By denying defendant's counsel an opportunity to inspect the presentence report and refusing to divulge any recommendation made by the probation officer; and (2) By imposing an excessive sentence.

At the outset we note that Neb. Rev. Stat. § 29-2261 (Reissue 1979) sets out the right of a criminal defendant or his attorney to investigate the contents of a presentence report. The pertinent subsections of the statute state:

"(1) Unless it is impractical to do so, when an offender had been convicted of a felony, the court shall not impose sentence without first ordering a presentence investigation of the offender and according due consideration to a written report of such investigation.

. . . .

"(5) Any presentence report or psychiatric examination shall be privileged and shall not be disclosed directly or indirectly to anyone other than a judge, probation officers to whom an offender's file is duly

transferred, or others entitled by law to receive such information. The court *may* permit inspection of the report or examination of parts thereof by the offender or his attorney, or other person having a proper interest therein, whenever the court finds it is in the best interest of a particular offender. The court may allow fair opportunity for an offender to provide additional information for the court's consideration." (Emphasis supplied.)

The law is well established in this state that in considering a proper sentence, the trial court is not limited in its discretion to any mathematically applied set of factors. It is necessarily a subjective judgment and includes the observations of the sentencing judge as to the demeanor, attitude, and all facts and circumstances surrounding the life of the defendant. "A sentencing judge has broad discretion as to the source and type of evidence or information which may be used as assistance in determining the kind and extent of the punishment to be imposed and the judge may consider *probation officer reports,* police reports, affidavits, and other information, including his own personal observations." (Emphasis supplied.) *State v. Kramer,* 203 Neb. 658, 660-61, 279 N.W.2d 634, 636 (1979); *State v. Miller,* 199 Neb. 19, 255 N.W.2d 860 (1977); *State v. Hylton,* 175 Neb. 828, 124 N.W.2d 230 (1963). Other than in recidivist cases, the presentence investigation is not involved with the issue of guilt of the defendant. The latitude allowed a sentencing judge in determining the nature and length of punishment is almost without limitation as long as it is relevant to the issue. *State v. Rose,* 183 Neb. 809, 164 N.W.2d 646 (1969). Moreover, this court has specifically held that the sentencing judge is not bound by the recommendations of the probation officer in determining the sentence to be imposed. *State v. Steed,* 201 Neb. 120, 266 N.W.2d 240 (1978).

In his brief on appeal, the defendant cites *State v. Richter,* 191 Neb. 34, 214 N.W.2d 16 (1973), for the

proposition that his attorney must be allowed to review a recommendation communicated between the probation officer and the sentencing judge. We do not agree. In *Richter*, we held only that it was harmless error for a sentencing judge to deny the defendant or his attorney access to that part of a presentence report which notes any prior record of arrests and convictions. See, also, *State v. Carey*, 199 Neb. 288, 258 N.W.2d 141 (1977). In the present case, however, the court did permit the defendant and his counsel to inspect the written presentence report. However, the defendant claims that he was denied an adequate opportunity to inspect the report because he was not allowed to respond to the recommendations made by the probation officer to the sentencing judge. Judge Reagan, at the time of the arraignment proceedings, indicated to the defendant that he would ask the probation office to compile information to be included in the presentence report and which, among many other things, would be utilized in determining the sentence to be imposed. The recommendation of the probation officer is just one of numerous considerations taken into account by the sentencing judge, and the recommendation in no way binds the judge in determining the sentence to be imposed. *State v. Steed, supra.* As indicated in § 29-2261(5), it is within the discretion of the sentencing judge to allow inspection of a probation officer's presentence report, which discretion is, of course, reviewable by this court. In this case we conclude that the sentencing judge did not abuse his discretion. See *State v. Keller*, 195 Neb. 209, 237 N.W.2d 410 (1976).

The defendant also contends that the sentence he received was excessive in comparison to the sentence imposed upon his codefendant, Dennis Paulson. The court, after reviewing the presentence reports of both Stranghoener and Paulson, concluded that Stranghoener's involvement in the murder of Goslee was greater than that of his codefendant, Paulson;

and therefore, after sentencing Paulson to 15 years' imprisonment, sentenced Stranghoener to 20 years' imprisonment. We cannot conclude from the record that the trial judge abused his discretion in so doing. In *State v. Etchison*, 188 Neb. 134, 137-38, 195 N.W.2d 498, 501 (1972), we stated: "The primary function of the criminal law is to protect individuals and society from the depredations of the criminally bent. In furtherance of this purpose, it is deemed necessary to mete out punishment as a deterrent to others and to lock up incorrigible criminals. On the other hand, the rehabilitation of criminals is one of society's major safeguards. Among factors meriting consideration are the family ties, age, mentality, education, experience, and social and cultural background of the convicted individual; his willingness to work at honest labor; his past criminal record or law abiding conduct; the motivation for the offense, the nature of the offense, and the amount of violence, if any, involved; the frankness and willingness of the defendant to cooperate; narcotic addiction, if any; circumstances aggravating or mitigating the offense; community attitudes toward the offense; and the individual's potentialities for reform or recidivism." Concededly, it is difficult, if not impossible, to accurately "color match" records of codefendants to determine the varying degrees of punishment each should receive. In this regard, the court is granted considerable discretion and latitude in making that decision.

In the instant case it appears from the presentence report that Stranghoener is married, has two children, was 27 years of age at the time of the crime, had serious mental problems, had a 10th grade education, and an antisocial personality. He has changed jobs frequently and has a prior record of suspected larceny from an automobile, injury-warrant, speeding, and trespassing. He is also an alcoholic who takes drugs whenever he can get them. According to the presentence report, his chances for reform are small. On the other

hand, according to Paulson's presentence report, he was 27 years of age at the time of the crime and attended school to the 10th grade, completing his G.E.D. during the 2 years he was in the Marines. Upon receiving a general discharge, he completed an automobile mechanics course while he was serving a 1- to 3-year sentence in the Nebraska Penal Complex for forgery. He was paroled in less than a year and discharged in a little over 2 years. The only other criminal charges against him for which he was sentenced were in 1978, they being possessing liquor on public property and having an open container. His work record includes about 1 year with a meat processor in Omaha while he was on parole, 6 months with another meat processor in Omaha, and about 8 months with Omaha Temporaries. While Paulson appears to have been the leader of the "family," the murder occurred in Stranghoener's home; and it also appears that Stranghoener provided the rifle used by McGee to shoot Goslee, and also the shotgun used by Paulson to cover McGee. Stranghoener helped to dispose of the body and of the murder weapon, while Paulson did not participate in the disposal of the body or the weapon. Both Stranghoener and Paulson were charged with first degree murder, which charges were reduced to second degree murder in exchange for pleas of guilty.

Under the provisions of Neb. Rev. Stat. § 28-304 (Reissue 1979) murder in the second degree is classified as a Class IB felony. Neb. Rev. Stat. § 28-105 (Reissue 1979) provides that the penalty for a Class IB felony is a maximum of life imprisonment and a minimum of 10 years' imprisonment. However, under our present statutes, we have held that upon conviction for second degree murder, the court is not authorized to pronounce an indeterminate sentence, but may impose a sentence of a definite term of years not less than the minimum authorized by law; or, in the alternative, may impose a sentence of life imprisonment. *State v. Randall,* 208 Neb. 248, 302 N.W.2d 733

(1981); *State v. Laravie*, 192 Neb. 625, 223 N.W.2d 435 (1974). The sentences imposed by the trial judge upon both Stranghoener and Paulson clearly comply with the requirements for sentences in second degree murder cases, and hence cannot be considered as excessive, particularly in consideration of the fact that as a result of their respective plea bargains they each had their charges reduced from first degree murder to second degree murder.

Our conclusion is, therefore, that the sentence of the trial court given Stranghoener of 20 years' imprisonment was not excessive, either in the abstract, or in comparison to the sentence meted out to Paulson; that the court did not abuse its discretion; and that said sentence should be and hereby is affirmed.

AFFIRMED.