STATE OF NEBRASKA, APPELLEE, v. CLINTON R. TURNER, APPELLANT.
381 N.W.2d 149

Filed February 7, 1986.    No. 85-378.

Joseph F. Chilen, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

After trial to a jury the defendant, Clinton R. Turner, was convicted of attempted second degree murder, count I; first degree assault, count II; use of a firearm in commission of a felony, count III; and burglary, count VI. He was sentenced to

imprisonment for 15 to 25 years on count I, with credit for 197 days; 6 to 18 years on count II, the sentence to run concurrently with the sentence on count I; 5 to 10 years on count III, the sentence to run consecutively to the sentences on counts I and II; and 18 months to 5 years on count VI, the burglary count, the sentence to run consecutively to the sentences imposed on counts I, II, and III. He has appealed and contends the trial court erred in sustaining an objection to a question regarding the state of mind of an accomplice, in failing to consider the state of the defendant's intoxication at the time of the offense when imposing sentence, and that the sentences imposed are excessive.

The prosecution was a result of the shooting of Benny C. AcFalle by the defendant on October 10, 1984, in Fairbury, Nebraska. AcFalle, who survived, was shot twice in the head at close range and was permanently blinded in both eyes by the first shot.

The record shows that shortly after 9 p.m. on October 9, 1984, the defendant, his brother Tom Turner, and the accomplice Nicky Scott White began drinking from a pint of vodka and a fifth of whiskey. The defendant alone drank most of the vodka, with the pint being consumed by 10:30 or 11 that evening. The defendant may have also consumed whiskey and beer during this time.

Tom Turner, White, and Caprice Turner, the defendant's wife, then left the house to purchase another bottle of vodka for the defendant. The defendant had begun to act intoxicated at this time.

The defendant resumed drinking sometime after 11 p.m., when the others returned. Within an hour to an hour and a half, he consumed up to half or more of a newly purchased liter of vodka. At that point his mannerisms included loud, slurred speech; making little sense when he spoke; a staggered walk; and lack of coordination.

White testified that he then asked if anyone would like to go with him to AcFalle's apartment to borrow a guitar. The defendant said that he would go, and they left the house some 30 to 45 minutes later.

There was testimony that, before leaving, the defendant

ripped open a jacket he was wearing because he was unable to manipulate its buttons. Caprice Turner testified that the defendant then threw the jacket on the floor and that she saw a gun in the waistband of his pants. She also testified that the defendant threw the gun on the dining room table and that Nicky White said, "Let's go." The defendant picked up his jacket and walked out the door, followed by White, who had grabbed the gun from the table. Tom Turner, who was seated at the head of the dining room table, testified that he did not see a gun when the defendant dropped his coat on the floor. White did not recall the defendant's having a gun prior to arriving at the AcFalle apartment and denied that he, White, had a weapon, other than perhaps a knife, when they left the house. The defendant had no recollection of having any type of weapon in his possession.

According to White, he and the defendant drove to the AcFalle apartment at 511½ D Street, Fairbury, Nebraska, in White's truck. Turner, who was stumbling, and White went up the stairs to AcFalle's apartment. Both the defendant and White testified that the defendant entered AcFalle's apartment by falling head first after climbing through a transom above the door to the apartment. The defendant then opened the door for White.

White testified that inside the apartment he offered AcFalle a drink and said, "[L]et's party." He then went to turn on a light, and as he got halfway across the room, with his back to the defendant and the bed on which AcFalle was seated, White heard a gunshot. He turned and saw the defendant with a gun pointed at the floor in front of AcFalle. White then moved quickly to push the defendant's arm to the bed. The defendant jerked away and White said they should leave. White left and claims that he heard the second shot as he got to the stairway. White ran down the stairs and was at the bottom of the steps when the defendant got to the stairs.

AcFalle testified that Turner and White entered his apartment uninvited. Because some light filtered into his room from the hallway, he was able to identify the two men as Turner and White. He saw that the defendant had a gun.

AcFalle testified that White poured drinks on him, after

which he was yanked off the bed and kicked a number of times. The kicking ended when AcFalle managed to get back on the bed. The defendant then placed a gun to AcFalle's head while White showed him a knife. The defendant then said, "[G]ive me a thousand dollars or your valuables." AcFalle responded that he would give them his money in the bank at a later time. White then put the knife to AcFalle's neck. One of the men demanded his car keys. AcFalle told them where the keys and his car were. The defendant then stated, "[Y]ou're a faggot," and shot AcFalle. AcFalle thought he heard White say, "You shot him. You shot him," then laughter. AcFalle was then shot in the head a second time, and the two assailants ran from the apartment.

The defendant testified that he had no memory of the incident after he fell through the transom until the next morning when he was awakened to see the police. Expert psychiatric witnesses testified on behalf of both parties that the defendant's memory loss was due to his level of intoxication on the night of the crime.

The defendant's first contention is that the trial court erred when it refused to permit Tom Turner to testify to statements made by Nicky White upon his return from the AcFalle apartment on October 10, 1984. The defendant claims that Turner's testimony was admissible under the state of mind exception to the hearsay rule to show White's state of mind immediately after the shooting and, inferentially, his demeanor and actions during the shooting.

On defense counsel's direct examination Tom Turner was asked if Nicky White had said anything to him, Tom, after returning home from the shooting. The State's hearsay objection was sustained, and the defendant made the following offer of proof:

> MR. CHILEN: --- and as an offer of proof, the defendant would show that had the witness Mr. Tom Turner testified, that he would say that Nicky Scott White advised him that he was going to take the gun and boots and leave for Idaho the following morning, and if the police had not arrived, and that he was going to dispose of the boots and the guns—the gun, singular, on the way to Idaho. That ends the formal offer of proof.

The defendant argues that there was an issue at the trial as to who, in fact, shot Benny AcFalle and that the trial court's exclusion of Tom Turner's testimony deprived the jury of access to relevant evidence. Specifically, the defendant alludes to the fact of conflicting testimony about who took the gun to the apartment; the fact that AcFalle's eyes were closed when the first shot was fired; the fact that AcFalle testified in his deposition that he could not "recall that question there" when asked if it was 1, 3, or 5 minutes between when he saw the defendant holding the gun to his, AcFalle's, head and when he was shot, but at trial testified it was only a second; the fact that White asked Caprice Turner to wash his clothes on his return from AcFalle's apartment; and the fact that White, a convicted felon, planned to leave for Idaho the morning after the shooting and had previously told AcFalle that he planned to rob a bank.

"The determination of the admissibility of evidence rests within the sound discretion of the trial court." *State v. Fries*, 214 Neb. 874, 877, 337 N.W.2d 398, 401 (1983).

Neb. Rev. Stat. § 29-2308 (Cum. Supp. 1984) provides in part:

No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence . . . if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred.

See, also, *State v. Plymate*, 216 Neb. 722, 345 N.W.2d 327 (1984).

From our examination of the record, we are satisfied that the ruling on the objection to the testimony of Tom Turner resulted in no substantial prejudice to the defendant. At best, this evidence was cumulative and of doubtful relevance.

There was an abundance of evidence as to the defendant's and White's participation in the crime. Although not of controlling importance, the evidence that the defendant actually shot AcFalle was substantial.

The excluded testimony would merely have been evidence of White's intent to leave Nebraska and to conceal evidence of the

crime. Other testimony of this nature had already been properly admitted into evidence at trial. White was questioned about the excluded statements on cross-examination:

Q. Did you tell anyone that in the event the police had not arrived by the next morning, you were going to leave for Idaho and dispose of the boots and gun on the way?

A. Well, something was said to the effect that I was going back to Idaho. I had been planning on leaving the next morning anyway, even prior to the accident happening.

White also testified to emptying the gun, wiping it off, and then throwing it in the back of his truck after returning home from the scene of the crime. He also threw the boots he had worn that night into his truck because he had lost a heel at the AcFalle apartment. In an attempt to avoid prosecution he had planned to tell the authorities that his truck had been stolen. Additionally, White's testimony showed that he changed into dark clothing after returning home. This was done in an effort to avoid being seen as he returned to the AcFalle apartment to retrieve the lost boot heel. White did return to the scene of the crime but did not enter the building because the police were already there.

The defendant next contends that the trial court abused its discretion by sentencing the defendant without considering his state of intoxication at the time of the alleged crimes and that the sentences imposed are not sustained by sufficient evidence, are excessive, and are contrary to law.

At the sentencing hearing the trial court stated that he did not consider the voluntary intoxication of the defendant to be a mitigating circumstance under the circumstances of this case. We think the record fully supports this view.

In *State v. Gamron*, 186 Neb. 249, 251, 182 N.W.2d 425, 427 (1970), this court held: "Where one deliberately pursues a course to voluntarily become intoxicated, as here, particularly where defendant was fully aware of his propensity to violate the law when drunk, there is little that can be said in his behalf in mitigation of the crime or the punishment."

In the present case the presentence investigation report shows that the defendant perceives himself as having an alcohol

problem because most all of his arrests have been alcohol related. It is true that both the State and defense psychiatric expert witnesses testified that the defendant's judgment was affected by his level of intoxication on the night of the shooting. Nevertheless, in this case, as in *Gamron, supra* at 251, 182 N.W.2d at 427, "[t]he lives and property of the public are entitled to protection against the criminal conduct of those who become voluntarily intoxicated."

Sentences imposed within statutory limits will not be disturbed by this court on appeal unless the trial court abused its discretion. *State v. Richter*, 220 Neb. 551, 371 N.W.2d 125 (1985).

Among the factors to be considered in the imposition of a sentence are the defendant's 'age, mentality, education, experience, and social and cultural background, as well as past criminal or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. See, *State v. Richter, supra*; *State v. Swillie*, 218 Neb. 551, 357 N.W.2d 212 (1984). Another important factor is the seriousness of an offense. *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985).

The defendant is nearly 27 years of age. He was convicted of assault and battery in Oklahoma in 1983 and possession of a controlled substance in Wyoming in 1984.

The defendant was convicted of a Class II felony, attempted second degree murder, which carries a penalty of from 1 to 50 years. Neb. Rev. Stat. §§ 28-304, 28-201(4)(a), 28-105(1) (Reissue 1979). He was also convicted of three Class III felonies, including first degree assault, use of a firearm in the commission of a felony, and burglary, each carrying a penalty of from 1 to 20 years' imprisonment. Neb. Rev. Stat. §§ 28-105(1), 28-308, 28-507, 28-1205 (Reissue 1979).

The defendant was sentenced to 15 to 25 years on count I, attempted second degree murder; to 6 to 18 years on the assault count, to be served concurrently with count I; to 5 to 10 years on the firearms count, to be served consecutively to counts I and II; and to 18 months to 5 years on the burglary count, consecutive to the first three counts. He was also credited with 197 days served in the county jail pending trial. The sentences

imposed, although severe, were well within the statutory limits.

The shooting of the victim was a cruel, violent, brutal, and senseless act. It is only by chance that the wounds did not prove fatal. As a result of the shooting, the victim is blinded for life and has been subjected to great pain and discomfort. Without question, such a crime merits a severe penalty.

In light of the seriousness and brutality of the offenses involved, the defendant's past record of alcohol and controlled substance abuse, and the permanence and severity of the victim's injuries, the sentences imposed in the present case were fully sustained by the record and not excessive.

The judgment of the district court is affirmed.

AFFIRMED.