STATE OF NEBRASKA, APPELLEE, V. ARTHUR C. PATRICK, APPELLANT.

418 N.W.2d 253

Filed January 29, 1988.    No. 87-446.

Dennis R. Keefe, Lancaster County Public Defender, and Michael D. Gooch, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The defendant, Arthur C. Patrick, was convicted of two counts of sexual assault of a child and sentenced to imprisonment for 1 to 2 years on each count, the sentences to run consecutively. He has appealed and contends that the evidence was insufficient to sustain the verdicts and that the sentences which were imposed are excessive.

In resolving a challenge to the sufficiency of the evidence to sustain a conviction in a criminal case, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. *State v. Richardson, ante* p. 274, 417 N.W.2d 24 (1987); *State v. Charron,* 226 Neb. 871, 415 N.W.2d 474 (1987). The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Patman, ante* p. 206, 416 N.W.2d 582 (1987); *State v. Thomte,* 226 Neb. 659, 413 N.W.2d 916 (1987). A jury verdict of guilty will not be overturned on appeal unless it is based on evidence so lacking in probative force that it can be said as a matter of law that the evidence is insufficient to support the verdict. *State v. Coffman, ante* p. 149, 416 N.W.2d 243 (1987); *State v. Joy,* 220 Neb. 535, 371 N.W.2d 113 (1985).

The victims in this case were sisters, 7 and 11 years old. The

record shows that the older girl had an arrangement with the defendant whereby she would work in his kitchen doing dishes, for which he would pay her $1 per day. Although she usually performed the duties unassisted, her mother and sisters were often at the defendant's home while she worked.

The older girl testified that she was at the defendant's home on July 22 or 23, 1986, after having been swimming with her sisters, her mother, and a cousin, R.J., at Pawnee Lake. Before arriving at the defendant's house, the mother dropped off all of the children except the older girl and her cousin at an uncle's house. She then proceeded to the defendant's home, where the older girl was going to wash dishes for the defendant. After dropping her off, the mother stated that she would return after taking R.J. home.

Upon arrival, the older girl noticed more dishes than usual, and as she began washing the dishes she found there was not enough counterspace for the dirty dishes, so she asked the defendant to come to the kitchen and tell her where to put the dishes. She testified that while she was standing in front of the sink with her back toward the defendant, the defendant touched her; "he came over behind me, and he put his hand up my pants." At the time of the incident she was wearing a pair of shorts over her swimming suit. She also stated that the defendant entered her shorts "[f]rom the front up my — by the bottom of the pants, shorts . . . in the back." Again, she stated, he "[p]ut his hand in like from the front, and after he put his hand under my shorts, he put it in my swimming suit," where he touched her vagina. She felt "[u]ncomfortable" and moved away from the defendant, at which time he returned to the living room and she completed the dishes.

When her mother returned, after about 30 minutes, she did not tell her mother of the incident because she was scared. She then left with her mother and two sisters and returned to their own home.

After returning home, the mother was warned by a neighbor that someone had tried to break into their apartment. The mother and children then returned to the defendant's home, asking if they could spend the night at his apartment, which was an efficiency. The defendant agreed, and placed an extra

mattress on the floor next to his bed in the living room for the mother and three daughters, while he slept on his own bed.

The group watched a movie in the living room, and at some point, the older girl stated that she needed a drink. The defendant assisted her in the kitchen, at which time he kissed her on her lips, again making her feel uncomfortable. She and the defendant then returned to the living room, where the defendant asked her to sit on his bed and watch TV with him, which she did. The defendant then touched her right buttock, on top of her clothes. She moved away, but again did not tell her mother of these episodes out of fear that the defendant would hurt her. The defendant did not touch her again in an offensive manner the remainder of that day.

As the mother and the daughters attempted to settle onto the mattress to sleep, they found the mattress crowded, and the girls began fighting over space. When the defendant asked if anyone wanted to share his bed, the younger girl accepted his offer. The younger girl testified that while she was pretending to sleep on the bed with the defendant, the defendant stuck his hand under the covers, placed his hand on the outside of her bathing suit, and touched her vagina. She then began to move around, and the defendant stopped. The defendant did not repeat the offense that night, but she testified that she had had touching problems with the defendant prior to this incident, and described their frequency as "almost every time when we went over there." She had never told anyone of these incidents, because of fear.

While she was at a slumber party on July 26, the older girl told a friend that she had been touched by the defendant. Several days later she told another friend, whose mother then became aware of the situation and informed the older girl's mother, who then notified the police.

After reporting the incidents, the older girl did not return to the defendant's home to perform kitchen duties. She testified that she had experienced touching problems with the defendant a few months after first knowing him, and that such incidents had continued for over a year. She had told the younger sister about the problem soon after it started, and then learned that the younger sister had experienced similar problems, although

not noticed by the older girl.

The older girl testified that some of the touching problems occurred toward the end of her fifth grade school year, near the time when she had watched a special program at school entitled "Kidability," which addressed the matter of "touching problems." From that program, she learned that she should report touching problems, which she did when they occurred that summer. The younger girl, upon learning that her older sister had told of the touching incidents by the defendant, then came forward and reported to her mother the sexual contacts that she had experienced with the defendant.

Although the victims' mother apparently did not witness any of the "touching" incidents, her testimony was corroborative of the other events of the day, as related by the two girls. She testified that on July 23, she did take her daughters and nephew swimming at Pawnee Lake, that on their way home they stopped at her brother-in-law's house, that she and the older girl proceeded to the defendant's house, and that the older girl was alone with the defendant when she went to pick her up. She further testified that the older girl attended a slumber party several days after July 23 and that after the party, she learned of the sexual assaults.

In regard to the younger girl, the mother corroborated the fact that the younger girl was sleeping on the bed with the defendant when she awoke, the following morning. The older girl testified that the younger girl moved from the mattress on the floor to the bed with the defendant and slept the entire night there with him.

The defendant denied engaging in inappropriate sexual conduct, denied touching either girl, and denied kissing the older girl.

The evidence which has been summarized was sufficient to permit the jury to find the defendant guilty beyond a reasonable doubt on both counts. The direct testimony by the two victims described the sexual assaults. The testimony of the mother provided corroborating evidence which, with the direct testimony of the victims, was sufficient evidence to support the verdicts.

Each offense is a Class IV felony. Neb. Rev. Stat.

§ 28-320.01 (Reissue 1985). A person convicted of a Class IV felony is subject to the following penalties upon conviction: "Maximum-five years imprisonment, or ten thousand dollars fine, or both"; "Minimum-none." Neb. Rev. Stat. § 28-105 (Reissue 1985).

We have repeatedly held that absent an abuse of discretion, this court will not reduce a sentence imposed by the trial court if the sentence is within statutory limits. *State v. Miller*, 226 Neb. 576, 412 N.W.2d 849 (1987); *State v. Schreck*, 226 Neb. 172, 409 N.W.2d 624 (1987); *State v. Nearhood*, 223 Neb. 768, 393 N.W.2d 530 (1986). "[E]vidence as to a defendant's life, character, and previous conduct is highly relevant," *Schreck, supra* at 176, 409 N.W.2d at 627, and may be considered in determining the propriety of the sentence. *State v. Dobbins*, 221 Neb. 778, 380 N.W.2d 640 (1986).

The sentences imposed by the trial court were well within statutory limits and do not appear to have been the product of an abuse of discretion. The evidence supports a finding that the defendant has displayed sexual tendencies toward the victims for more than 1 year. Sexual advances and assaults on minor children are serious offenses. "The punishment for a criminal act should in all circumstances be commensurate with the offense." *State v. Foutch*, 196 Neb. 644, 646, 244 N.W.2d 291, 292 (1976); *State v. Kowalski*, 214 Neb. 48, 332 N.W.2d 678 (1983). We find no abuse of discretion.

The judgment of the district court is affirmed.

AFFIRMED.