STATE OF NEBRASKA, APPELLEE, V. ELEAZAR MORENO, ALSO KNOWN AS ELIASAR GARZA, ALSO KNOWN AS ELEAZAR MORENO ALVARADO, APPELLANT.

422 N.W.2d 56

Filed April 8, 1988.   No. 87-690.

Paul E. Hofmeister of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, P.C., for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

A jury convicted the defendant, Eleazar Moreno, of brutally assaulting, robbing, and falsely imprisoning a 69-year-old woman after he participated in burglarizing her home in the early morning hours of December 22, 1986.

On the burglary and robbery charges, Moreno, known as Eliasar Garza, also known as Eleazar Moreno Alvarado, was given concurrent prison sentences totaling 10 to 20 years. On the assault and false imprisonment charges, Moreno was given concurrent prison sentences totaling 6 to 15 years, those sentences to run consecutively to the burglary and robbery sentences. Moreno appeals both his convictions and sentences. We affirm.

The defendant assigns the following as errors: (1) The evidence was insufficient to support the convictions; (2) the trial court erred in failing to give the alibi instruction offered by the defendant; and (3) the sentences imposed are excessive and

were an abuse of discretion by the trial judge.

With respect to the defendant's first assignment of error, this court has repeatedly stated that in resolving a challenge to the sufficiency of the evidence to sustain a conviction in a criminal case, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. *State v. Babcock*, 227 Neb. 649, 419 N.W.2d 527 (1988); *State v. Patrick*, 227 Neb. 498, 418 N.W.2d 253 (1988); *State v. Richardson*, 227 Neb. 274, 417 N.W.2d 24 (1987); *State v. Charron*, 226 Neb. 871, 415 N.W.2d 474 (1987). The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Patrick, supra*; *State v. Patman*, 227 Neb. 206, 416 N.W.2d 582 (1987); *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987).

Taking a view of the evidence most favorable to the State, the record reflects that Charlotte Meyer, 69, went to bed about 10:45 p.m., December 21, 1986. Her bedroom was located on an upper floor of her home which was situated on a farm southwest of Gering, Nebraska. The doors to the home were locked when Meyer retired.

Meyer was awakened by a light's being turned on in the hall outside her bedroom. She saw a tall man and a short man standing in the hall. Meyer spoke, and the tall man, whom Meyer later identified as the defendant, Moreno, immediately came into her bedroom. Moreno was wearing a white straw hat with a tall, high crown. He pinned Meyer to her bed, with his knees straddling her body. Moreno began choking Meyer with his hand. He hit his victim in the eyes with his fist and beat her face. Meyer asked the man's identity. He responded, "We're Cubans." She then asked him what he wanted and he responded, "Money." Meyer told him she did not have any money. Moreno again struck Meyer in the face and eyes.

Eventually, the defendant removed himself from the bed. Then he stuck his fingers into Meyer's mouth. Meyer testified she bit down "real hard" on two of his fingers, perhaps hard enough to draw blood. Thereupon, Moreno grabbed Meyer by her hair and pulled her out of bed. The defendant dragged his victim downstairs and outside to the back cement terrace. He

told her to "Get up." When Meyer responded that she could not get up, Moreno kicked her in the right breast with his boot. He then pulled her up, and in response to her plea, he assisted her back into the house. As they got near her bedroom, Meyer could see a blanket on the floor with her typewriter, Skil saw, and jewelry on it. The short man, whom Meyer had seen in the hall with Moreno, was at Meyer's dresser sorting and taking jewelry from a drawer and placing it on the blanket.

The defendant shoved Meyer onto her bed and again beat her head and eyes. The defendant repeated his request for money, and again Meyer said she had no money. Meyer said she would write Moreno a check. Her vision had become blurry because of the beatings. Her bed was soaked with her blood. The victim requested that Moreno take her to the bathroom so she could rinse her bloody eyes to permit her to see to write the check. When she got in the bathroom, one of the men grabbed Meyer's hands from behind. An electric razor cord was placed around Meyer's neck. A photograph of Meyer's neck showed the injuries inflicted by Moreno and where the razor cord had been. Meyer's hands were bound very tightly behind her back, and Meyer dropped to the floor saying, "I give up." The men then left the bathroom and continued to ransack Meyer's house. Meyer waited on the bathroom floor until she heard the men leave the house, get in their car, and drive away. Meyer then crawled around the house on her knees and tried unsuccessfully to use the telephone with her teeth and tongue. Some 12 to 14 hours after the crimes were committed, her daughter found Meyer, weak from loss of blood, on the kitchen floor near a baseboard heater, where she was attempting to keep warm.

Meyer described her injuries: All bones around the eyes were crushed; fractures on both sides of the skull; cuts above both eyes; bruises to the neck, entire face, right breast, knee and right arm; numbness of the teeth and one side of the face; and damage to the thumbs caused by them being tied back when her hands were bound behind her. Meyer suffered permanent damage to her right eyeball, which could not move up or down after the beatings. Surgery only partially corrected that condition. She still suffers severe glaucoma and blurry vision from the beatings. An emergency room physician substantially

corroborated Meyer's injuries and added that her back was also bruised.

On January 3, 1987, law enforcement officers executed a search warrant at a house in Scottsbluff where Moreno was staying. The officers found Meyer's jewelry, Skil saw, tool box, jewelry box, a Harlan County belt buckle, and a hat which Meyer identified as the hat worn by the defendant at the time he committed the crimes against her. The officers also found blankets which were stolen from the Meyer home.

Maria Ansria, a restaurant worker, testified that Moreno showed her some rings and pendants. While he was showing the jewelry to her, the witness observed a handkerchief wrapped around one of Moreno's hands. Ansria testified she took a ring from the defendant because he owed her some money. The ring was identified by Meyer as one that she had owned since she was in high school. The victim testified that the ring was in her house the night she was attacked.

From the oral and physical evidence in this case, a jury could find beyond a reasonable doubt that during the early morning hours of December 22, 1986, the doors to the Meyer home were locked; that entry to the home was gained through a back door by willfully, maliciously, and forcibly breaking the door's window; and that whoever entered the home did so with intent to commit the felony crime of robbery and with the intent to steal property of value because both of those are precisely what the intruders accomplished upon entering the Meyer home.

Under Neb. Rev. Stat. § 28-507(1) (Reissue 1985), "A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value."

Moreno admitted that he was at the Meyer farm, but denied that he entered the home or participated in any of the crimes committed there in the early morning hours of December 22, 1986. The defendant claims he was intoxicated from alcoholic beverages and marijuana at the times the crimes were committed. Moreno testified he left the vehicle he had been riding in to find two companions who, for a period of time, had absented themselves from the vehicle. Moreno's denial of

entering the Meyer home fades into oblivion by overwhelming evidence to the contrary. A jury could infer beyond a reasonable doubt that the car in which the defendant was riding did not arrive at the Meyer home by happenstance. There was uncontroverted evidence that Moreno worked on the Meyer farm approximately 3 months before the crimes were committed. Moreno's fingerprint was found on a glass fragment of the broken back door window, the door where entry was gained. Items taken from the Meyer home were located in the house where the defendant resided. The defendant displayed some of the items stolen from Meyer's home to a restaurant worker, who testified, not only to that fact, but also that the defendant's hand was wrapped in a handkerchief. A jury could infer beyond a reasonable doubt that it was Moreno's fingers Meyer bit during the course of the crimes against her. Most devastating to the defendant's denial of being in the Meyer home was the testimony of Meyer herself. She positively identified Moreno as the man who beat her, dragged her by the hair to the outside cement patio, and kicked her in the breast with his boot. She also identified clothing found in the defendant's residence which Moreno wore at the time of the crimes.

From the direct and circumstantial evidence, a jury could find beyond a reasonable doubt that if the defendant was not solely responsible for the Meyer burglary, he certainly was an aider and abettor. An aider and abettor may be prosecuted as the principal offender. Neb. Rev. Stat. § 28-206 (Reissue 1985); *State v. Schreck*, 224 Neb. 650, 399 N.W.2d 830 (1987); *State v. Bennett*, 219 Neb. 601, 365 N.W.2d 423 (1985). The evidence is overwhelming that Moreno participated in the burglary of the Meyer home, and his conviction of that crime should be affirmed.

In regard to the robbery charge, Neb. Rev. Stat. § 28-324 (Reissue 1985) provides: "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever."

The taking of property under § 28-324 does not need to be from the "person." It is sufficient if the property is taken from the individual's personal presence, protection, or control. See,

*State v. Bird Head*, 225 Neb. 822, 408 N.W.2d 309 (1987); *State v. Sutton*, 220 Neb. 128, 368 N.W.2d 492 (1985); *State v. Welchel*, 207 Neb. 337, 299 N.W.2d 155 (1980).

As previously set forth, the record is saturated with evidence that it was Moreno who used force and violence while Meyer's possessions were taken from her personal presence, protection, and control. Meyer observed these possessions being sorted for asportation from her home. The items were found in the defendant's residence and were identified by Meyer as being some of the possessions taken from her during the attacks. Moreno displayed some of the stolen items to a restaurant worker. The jury, from common experience, could find beyond a reasonable doubt that the stolen items had value. Again, the evidence is overwhelming that Moreno participated in the robbery of Meyer and that his conviction of that crime should be affirmed.

Assault in the first degree is committed when a person "intentionally or knowingly causes serious bodily injury to another person." Neb. Rev. Stat. § 28-308(1) (Reissue 1985). The facts previously set forth in this opinion demonstrate that Moreno knowingly and intentionally inflicted numerous serious bodily injuries upon Meyer. She was choked, battered, bruised, dragged, and kicked by Moreno. Her right eye was permanently damaged, her thumbs were severely injured, her bones were broken, and she became anemic from loss of blood. The intensity and severity of Meyer's injuries attest to their seriousness. The evidence is overwhelming that Moreno is guilty of assault in the first degree and that his conviction for that crime against Meyer should be affirmed.

"A person commits false imprisonment in the first degree if he knowingly restrains or abducts another person (a) under terrorizing circumstances or under circumstances which expose the person to the risk of serious bodily injury . . . ." Neb. Rev. Stat. § 28-314(1) (Reissue 1985).

After the defendant had choked, beaten, and dragged Meyer through her home and outside, and after beating Meyer again, Moreno took her to the bathroom, where she intended to wash the blood from her eyes. It was there that she was again choked, this time with the cord from an electric razor. She was left with

her arms tied tightly behind her back. Meyer was imprisoned in her own home. Before she was bound, she had "given up." She lay on the bathroom floor until Moreno, who had terrorized her, and his companion had left in an automobile. Meyer was not only exposed to the risk of serious bodily injury by the imprisonment, she suffered it. Photographs reflect a substantial amount of Meyer's blood in her bed, on the bathroom floor, in the hallway, on the stairway, in the kitchen, and on the cement patio. Loss of blood caused Meyer to become anemic. She crawled around her house on her knees. She was cold. She could not leave the house to seek assistance. Because her hands were bound, she could not use the telephone to seek help. At trial, there was sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant, either as an aider and abettor or solely, restrained the defendant under terrorizing circumstances or under circumstances which exposed Meyer to the risk of serious bodily injury. Moreno's conviction for that crime should be affirmed.

The defendant attempted to invoke what is commonly called an alibi defense. To establish an alibi defense, a defendant must show (1) he was at a place other than where the crime was committed, and (2) he was at such other place such a length of time that it was impossible for him to have been at the place where and when the crime was committed. *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987); *Mays v. State*, 72 Neb. 723, 101 N.W. 979 (1904); *State v. Sutton*, 220 Neb. 128, 368 N.W.2d 492 (1985).

Although admitting he was at the Meyer house, Moreno claims he remained outside the home while the crimes were committed. He also claims he was too intoxicated from alcohol and marijuana to commit the acts charged. It is inherent in the verdict that the jury rejected those two claims. The defendant's admission that he was at the Meyer home eliminates the necessity for an alibi instruction. There is no evidence in the record which even suggests that the defendant in this case was so far from the crime scene that it would have been impossible for him to have committed the crimes. His fingerprint on the back door glass fragment places him where the Meyer break-in

occurred. There being no basis in the evidence for the trial judge to give an alibi instruction, he properly refused to give it. The trial court is not required to give an instruction where there is insufficient evidence to prove the facts claimed. *State v. Clayburn*, 223 Neb. 333, 389 N.W.2d 314 (1986); *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984); *State v. Scott*, 212 Neb. 625, 324 N.W.2d 670 (1982).

With respect to the defendant's final assignment of error, the record and the presentence investigation report demonstrate that the sentences imposed are entirely appropriate.

This court has repeatedly held, "where the punishment of an offense created by statute is left to the discretion of the court to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed on appeal unless there appears to be an abuse of discretion." *State v. Benzel*, 220 Neb. 466, 479, 370 N.W.2d 501, 512 (1985); *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988); *State v. Carlson*, 227 Neb. 503, 418 N.W.2d 561 (1988); *State v. Morrow*, 220 Neb. 247, 369 N.W.2d 89 (1985).

In this state, the statutory penalty for robbery is not less than 1 nor more than 50 years' imprisonment. Burglary and assault in the first degree carry a statutory penalty of not less than 1 nor more than 20 years' imprisonment, or a fine up to $25,000, or both. False imprisonment carries a penalty of up to 5 years' imprisonment, or up to a $10,000 fine, or both. Neb. Rev. Stat. §§ 28-324, 28-507, 28-308, 28-314, and 28-105 (Reissue 1985). The sentences may each be imposed consecutively. The sentences imposed upon Moreno are all well within the limits prescribed by statute.

In imposing a sentence a trial court should consider inter alia the defendant's age, mentality, education, experience, and social and cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Turner*, 221 Neb. 852, 381 N.W.2d 149 (1986); *State v. Swillie*, 218 Neb. 551, 357 N.W.2d 212 (1984); *State v. Stranghoener*, 208 Neb. 598, 304 N.W.2d 679 (1981). The seriousness of the offense is an important factor in the setting of a sentence. *State v. Schreck*, 226 Neb.

172, 409 N.W.2d 624 (1987); *State v. Swillie, supra*; *State v. Sare*, 209 Neb. 91, 306 N.W.2d 164 (1981). Evidence as to a defendant's life, character, and previous conduct is highly relevant to the determination of a proper sentence. *State v. Schreck, supra*; *State v. Dobbins*, 221 Neb. 778, 380 N.W.2d 640 (1986).

On the burglary charge, the defendant was sentenced to an indeterminate term of 6 to 15 years' imprisonment and on the robbery charge to an indeterminate term of 10 to 20 years' imprisonment, which sentence runs concurrently with the burglary sentence. On the assault charge, the defendant was sentenced to an indeterminate term of 6 to 15 years' imprisonment and upon the false imprisonment charge an indeterminate term of from 20 months' to 5 years' imprisonment, that sentence to be served concurrently with the assault sentence. The assault and false imprisonment sentences were ordered to be served consecutively to the sentences for burglary and robbery.

The presentence investigation report reflects that Moreno has little respect for the laws of this country. A Mexican citizen, he entered this country illegally on several occasions and has been deported to Mexico on four separate occasions after he committed crimes in the United States. He has used aliases in an attempt to avoid detection of his illegal activities. Moreno has not been honest with law enforcement officials in Nebraska.

The crimes for which Moreno was convicted were cold, calculated, brutal, senseless, and nearly cost the victim her life. Meyer's injuries were so serious that she had to spend 7 days in the intensive care ward of a hospital. She has had to undergo surgery and has the prospect of additional surgery. Obviously, she has suffered psychological damage that will undoubtedly remain with her the rest of her life. Meyer's medical costs totaled $8,491.68 at the time the defendant was sentenced. The record is absolutely devoid of any remorse by Moreno for his crimes or any sympathy on his part for the victim.

Considering the facts that the sentences imposed by the district are within the statutory limits; of the numerous acts of extreme violence involved; that Moreno is addicted to alcohol and marijuana; that Moreno has little respect for the law; that

Moreno has shown no remorse for his crimes; that any lesser sentences would depreciate the seriousness of the crimes Moreno committed; and, most importantly, that the public needs to be protected, we cannot say the trial judge abused his discretion in sentencing the defendant.

None of the defendant's assignments of error have any merit. The convictions and sentences of the defendant, Moreno, are affirmed.

AFFIRMED.