STATE OF NEBRASKA, APPELLEE, V. HERBERT C. BEWLEY,
APPELLANT.
426 N.W.2d 286

Filed July 22, 1988.   No. 87-799.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Robert M. Spire, Attorney General, and Bernard L. Packett for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

After his unprovoked, racially motivated shotgun attack on a black man, Herbert C. Bewley, a white man, was found guilty by a jury of first degree assault and use of a firearm in the commission of a felony.

Bewley was sentenced to the maximum possible indeterminate prison term of not less than 6 $2/3$ nor more than 20 years on the assault. The weapons sentence was a prison term of not less than 5 nor more than 10 years, to run consecutively to the assault sentence.

Bewley appeals, claiming there was insufficient evidence to convict him and that his sentences are excessive. We affirm.

In determining whether evidence is sufficient to sustain a conviction in a jury trial, the Supreme Court does not resolve conflicts of evidence, pass on the credibility of the witnesses,

evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province to resolve. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict. *State v. Hook*, 228 Neb. 138, 421 N.W.2d 456 (1988); *State v. Moreno*, 228 Neb. 210, 422 N.W.2d 56 (1988); *State v. Bodfield*, 228 Neb. 205, 421 N.W.2d 794 (1988).

Just before 1:30 a.m. on August 31, 1986, Luches Conway, a black man, and his white female friend were eating nachos while seated in the friend's car located in the parking lot of a 7-Eleven store in Omaha, Nebraska. Two white males drove by the car on a motorcycle and yelled a racial slur directed at Conway and his friend. The motorcycle and its riders returned. Conway got out of the car. A fight ensued between Conway and the two white males. A third white male, not involved in either the yelling or the fight, was standing near his own car in the 7-Eleven parking lot. He was later identified as the defendant, Bewley. With a vulgarity, Bewley yelled for the two white males to leave. The two white males remounted their motorcycle and left. Conway noted that Bewley had a shotgun pointed at him.

Conway told Bewley that he was going to call the police. Conway testified the defendant responded, "No, you aren't, nigger. I'm going to kill you." Conway was shot on the right side of his head and fell to the sidewalk. Following the shooting, Conway was hospitalized and remained in a coma for several weeks. After 3 months, Conway was discharged from the hospital. There was some damage to Conway's brain.

The first police officer arrived at the scene of the shooting at 1:31 a.m. Conway's female companion gave the officer a description of the assailant and his vehicle. She also remembered a license number for the car. Ultimately, after some confusion concerning the license number, police officers traced the vehicle and were given permission to search the car by its owner, Bewley's girlfriend.

Inside the car were found several live 12 gauge shotgun shells. At least two of these shells were the same color, brand, and gauge as a spent shell found at the scene of the crime. The vehicle was impounded.

After searching the car, officers questioned the defendant

inside the apartment he shared with his girlfriend. Bewley admitted driving the car that night. He claimed he returned home around 1 a.m. Bewley did not match the description given by Conway's friend, and the police officers did not immediately arrest him. Later that day, Conway's friend was asked to view a live lineup, which included the defendant. She picked out Bewley as the man who shot Conway. Conway's friend was also taken to the police impoundment lot where she positively identified the car Bewley had admitted driving the night before and early morning of the shooting. On October 15, 1986, a police officer took a photographic lineup to the hospital where Conway was recovering. Conway also picked out the defendant as the man who shot him. At trial, Conway positively identified Bewley as the man who shot him.

The State called as a witness Pamela Gwynn, a clerk at the 7-Eleven store on the night of the shooting. She identified Bewley as a regular customer of the store. She testified that he came into the store shortly before the shooting. Gwynn saw Conway fall after he was shot, and called police.

The defendant did not testify at the trial. In his defense, Bewley presented the testimony of Jackie McGinnis, a bartender at a local bar. McGinnis claimed she saw Bewley talking with two women outside the bar after closing time. She testified that she left the bar at approximately 1:20 a.m. McGinnis said she stopped and talked with Bewley until about 1:45 a.m. Esparanza Williamson testified that she and another woman talked with Bewley outside the bar until they left at approximately 1:20 a.m.

The alibi testimony presents the only conflict in the evidence. If the alibi story is accurate, Bewley could not have committed a crime which police officers arrived to investigate at 1:31 a.m., and Bewley's identification by Gwynn, Conway, and Conway's friend would all be erroneous.

Clearly, the jury chose not to believe the alibi testimony. The State's evidence, if believed, was more than sufficient to sustain Bewley's conviction. The jury obviously believed the State's evidence.

Bewley also complains that the sentences he received are excessive. Both crimes of which Bewley was convicted are Class

III felonies. The penalty for a Class III felony is a minimum of 1 and a maximum of 20 years' imprisonment, or up to a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1985). The law requires that a sentence for use of a firearm in the commission of a felony shall be served consecutively to the underlying sentence. Neb. Rev. Stat. § 28-1205(3) (Reissue 1985).

A sentence imposed within statutory limits will not be disturbed, absent an abuse of discretion. *State v. Clark*, 228 Neb. 599, 423 N.W.2d 471 (1988); *State v. Moreno*, 228 Neb. 210, 422 N.W.2d 56 (1988); *State v. Frelo*, 228 Neb. 122, 421 N.W.2d 447 (1988).

Both of Bewley's sentences are within the statutory limits. Among the factors to be considered by the sentencing judge are the motivation for and the nature of the offense, the amount of violence involved in the commission of the crime, and the seriousness of the offense. *State v. Moreno, supra*. At sentencing, the trial judge noted that Bewley "intentionally and brutally without provocation assaulted a person by shooting at him point-blank with a shotgun leaving the victim paralyzed and disfigured and dependent on others for the rest of his life."

Shooting another human being with a shotgun is an extremely serious crime. Conway could easily have died as a result of Bewley's action. The record is clear that Conway did nothing to provoke the attack. Racial bias apparently was Bewley's only motive for committing the crimes. The trial court did not abuse its discretion in imposing the sentences it did.

The judgment and sentences of the trial court are affirmed.

AFFIRMED.