STATE OF NEBRASKA, APPELLEE, V. SCOTT PHILLIP THOMAS, ALSO
KNOWN AS PHILLIP WAYNE COOK, APPELLANT.

428 N.W.2d 221

Filed August 26, 1988.   No. 88-405.

Kent E. Florom, Lincoln County Public Defender, for
appellant.

Robert M. Spire, Attorney General, and Marilyn B.
Hutchinson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The defendant, Scott Phillip Thomas, also known as Phillip
Wayne Cook, appeals as excessive his sentences for theft and
criminal mischief. We affirm, but modify the trial court's
written judgment to conform with the sentence pronounced.

At his first appearance in district court, the defendant
appeared pro se and advised the court that he had previously
refused to have an attorney appointed for him, that he had

waived a preliminary hearing, and that he did not want an attorney appointed to represent him or to assist him as a legal advisor. The defendant said he would hire his own attorney. When arraigned on the original charges filed against him, Thomas entered pleas of not guilty.

At the defendant's second arraignment in district court, the judge advised Thomas that if he was indigent, he was entitled to have an attorney appointed to represent him without cost. The defendant proceeded pro se. Thomas specifically waived the services and presence of both appointed and private counsel. Thomas told the judge that no one had threatened, pressured, or coerced him into waiving his right to be represented by counsel.

Pursuant to a plea agreement with the State, Thomas entered pleas of "no contest" to two violations of statutes: (1) taking or exercising control over movable property of another with the intent to deprive the owner thereof, the property being valued at over $300 but less than $1,000, contrary to Neb. Rev. Stat. §§ 28-511 and 28-518 (Reissue 1985), and (2) causing pecuniary loss of more than $300 by intentionally or recklessly damaging or intentionally tampering with the property of another so as to endanger a person or property, or intentionally or maliciously causing another to suffer pecuniary loss by deception or threat, contrary to Neb. Rev. Stat. § 28-519 (Reissue 1985).

Each charge constituted a Class IV felony. Violation of a Class IV felony is punishable by a maximum of 5 years' imprisonment, up to a $10,000 fine, or both. There is no minimum. Neb. Rev. Stat. § 28-105 (Reissue 1985).

On each of the charges, the court pronounced that Thomas serve a term of not less than $1\frac{1}{2}$ nor more than 3 years in the Nebraska Penal and Correctional Complex. The sentences were ordered to be served concurrently. In addition, the defendant was ordered to pay restitution of $1,101 to the victim, and Thomas was given credit for 21 days served in jail while awaiting final disposition of his case.

Before the plea agreement, Thomas had been charged with one Class III felony, a Class I misdemeanor, and a Class IV felony. Violation of a Class III felony carries a penalty of not less than 1 nor more than 20 years' imprisonment, up to a

$25,000 fine, or both. § 28-105. Violation of a Class I misdemeanor carries a penalty of not more than 1 year's imprisonment, up to a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 1985).

Before the defendant's "no contest" pleas were accepted and before he was found guilty on each charge, the defendant was given his rights in compliance with *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). Among the rights explained to the defendant were his rights to a jury trial, to confront and cross-examine his accusers, to subpoena witnesses, to not incriminate himself, and to be represented by a lawyer. The elements of each crime and the possible penalties were explained to the defendant. Thomas said he understood each of his constitutional rights and understood that by pleading no contest he waived them. Thomas also said he understood the range of penalties which could be imposed. He further stated that no one had threatened him, pressured him, or coerced him in any way to enter the no contest pleas. Thomas said no one had made promises as to what sentences he would receive. He said he was entering his pleas voluntarily of his own free will. The court also explained to Thomas that if he was indigent, the court would appoint an attorney for him at no cost to the defendant.

After recital of facts by the prosecutor, the trial court found that there was a factual basis for each charge and each plea. That factual basis showed that the defendant had been a live-in resident in the victim's home in North Platte, Nebraska. In mid-September 1986, the victim reported that five diamond rings, luggage, and miscellaneous items belonging to her were missing from her residence. A jeweler valued the missing rings at $2,500.

Prior to the commission of the crimes, the victim told Thomas that he must leave her home. Thereafter, Thomas telephoned the victim and told her that he would rip up her clothes and ruin them. When the victim returned to her residence the day after the telephone call, she found that approximately 50 of her dresses were damaged or destroyed. The defendant was arrested in Colorado, and, at the time of his arrest, he was in possession of the victim's luggage and diamond

rings. There was about $700 pecuniary loss as a result of the damage to or tampering with the victim's clothing.

The defendant told the judge he did not contest the factual basis as related by the prosecutor. The court found a factual basis for Thomas' pleas and that the defendant knowingly, voluntarily, and intelligently entered his plea of no contest to each of the charges against him. The court accepted the pleas of the defendant and found him guilty of both charges.

Thomas' sole assignment of error is that his sentences are excessive.

In imposing a sentence, a trial court should consider inter alia the defendant's age, mentality, education, experience, and social and cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Moreno*, 228 Neb. 210, 422 N.W.2d 56 (1988); *State v. Turner*, 221 Neb. 852, 381 N.W.2d 149 (1986); *State v. Swillie*, 218 Neb. 551, 357 N.W.2d 212 (1984); *State v. Stranghoener*, 208 Neb. 598, 304 N.W.2d 679 (1981). The seriousness of the offense is an important factor in the setting of a sentence. *State v. Moreno, supra; State v. Schreck*, 226 Neb. 172, 409 N.W.2d 624 (1987); *State v. Swillie, supra; State v. Sare*, 209 Neb. 91, 306 N.W.2d 164 (1981). Evidence as to a defendant's life, character, and previous conduct is highly relevant to the determination of a proper sentence. *State v. Moreno, supra; State v. Schreck, supra; State v. Dobbins*, 221 Neb. 778, 380 N.W.2d 640 (1986).

The defendant was single and 30 years old at the time he committed the crimes. The defendant claims he attended college for $3^1/_2$ years. The record is unclear as to when, where, and for how long the defendant actually was in college. He had a commercial pilot's license, but it was not current at time of sentencing due to the expiration of the defendant's medical rating.

From September of 1986 to time of sentencing, the defendant had been videotaping weddings for $200 apiece. Previous employment included working for a flying club in Kentucky and running an income tax business in Colorado.

According to the victim's statement, she and the defendant

started a business together. Thomas asked the victim for money to invest in the stock market so the business account could be enlarged. He handled all the business bookwork and kept the checkbook from the victim. The checking account became overdrawn. The victim found the checkbook and discovered what was happening. She called a locksmith and had the locks to her house changed.

In her statement, the victim further states that while the locksmith was there, Thomas came to the residence, pushed the victim into a bathroom, hit her, and threatened her with a gun. The victim told the locksmith to call the police, whereupon the defendant left for a bar. The victim took Thomas' gun from his truck and went to a friend's home for the night. Thomas called and demanded his gun. When the victim responded negatively, the defendant told her that he was going to cut up all her clothes and put sugar in her gas tank.

The victim contacted the police, gave them the gun, and had an officer go to the house with her. The defendant had left for Colorado.

Thomas, when apprehended, was concerned that some of his belongings were still with the victim. He rationalized taking the victim's rings because she had his Rolex watch. He told the court that he did not steal them "just for the sake of stealing."

At the time of sentencing, the defendant had two insufficient-fund checks drawn on the business account, which he said he would resolve.

At sentencing, the court considered the recommendation of the probation officer that the defendant not be given probation. The court also considered the harm done to the victim; factors relevant to the proceedings, including defendant's failure to appear when ordered; and whether the defendant would satisfactorily complete the probation if it were granted.

The defendant's prior record includes failure to appear, in Colorado, in 1983; resistance, disturbance, and destruction of private property in 1983; and an assault and battery, which the defendant claims was only a battery, for which he was fined $60. A failure-to-appear warrant was issued for that assault and battery. The battery, or assault and battery, occurred after the

crimes at issue here.

The court concluded that the defendant would not satisfactorily complete probation because he did not appear to have stable employment or location, and on at least two occasions he failed to appear or appeared late for court proceedings in the present case. The court found that probation would depreciate the seriousness of the offenses.

The written judgment entered by the district court omits reference to restitution and gives the defendant credit for only 11 days served in the county jail.

A sentence pronounced upon a defendant is controlling over a later erroneous written sentence. We have consistently held that "[a] sentence validly imposed takes effect from the time it is pronounced, and a subsequent sentence fixing a different term is a nullity." *State v. Holmes*, 221 Neb. 629, 632, 379 N.W.2d 765, 768 (1986); *State v. Vernon*, 218 Neb. 539, 356 N.W.2d 887 (1984); *State v. Christiansen*, 217 Neb. 740, 351 N.W.2d 67 (1984). The discrepancy between the oral and written sentences creates plain error on the record. Plain error may be found on appeal when an error, unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would cause a miscarriage of justice or damage the integrity, reputation, and fairness of the judicial process. See, *In re Estate of Fischer*, 227 Neb. 722, 419 N.W.2d 860 (1988); *Enyeart v. Swartz*, 218 Neb. 425, 355 N.W.2d 786 (1984); *State v. Beyer*, 218 Neb. 33, 352 N.W.2d 168 (1984).

The sentences pronounced upon the defendant are well within the statutory limits for Class IV felonies. A sentence imposed within the limits prescribed by statute will not be set aside as excessive absent an abuse of discretion by the sentencing judge. *State v. Ladehoff, ante* p. 111, 425 N.W.2d 352 (1988); *State v. Clark*, 228 Neb. 599, 423 N.W.2d 471 (1988). We find the trial court did not abuse its discretion. The sentences as pronounced must stand.

However, since a judgment is rendered when pronounced, there would be a substantial miscarriage of justice if the written judgment is not made to conform with the pronounced judgment. We modify the written judgment by giving the

defendant credit on his sentences for 21 rather than 11 days served in jail while awaiting final disposition of his case and by ordering the defendant to make restitution to the victim in the amount of $1,101.

AFFIRMED AS MODIFIED.