STATE OF NEBRASKA, APPELLEE, V. TIMOTHY B. SWILLIE, APPELLANT.

357 N.W.2d 212

Filed October 26, 1984. No. 84-233.

552

Donald W. Kleine, for appellant.

Paul L. Douglas, Attorney General, and L. Jay Bartel, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

After trial to a jury the defendant, Timothy B. Swillie, was convicted of assault in the first degree and use of a firearm in the commission of a felony. He was sentenced to imprisonment for 4 to 8 years on count I, and to imprisonment for 2 years on count II, the sentences to run consecutively. He has appealed, and contends the trial court erred in permitting a rebuttal witness called by the State to testify over objection and that the sentences imposed were excessive.

The offense consisted of shooting Kim Morrow with a handgun while she was sitting in an automobile parked in front of Phil's Foodway in Omaha, Nebraska.

The record shows that the defendant and the victim had lived together, but had separated in October 1983. The defendant is the father of the victim's two children, sons 8 and 2 years of age.

On December 1, 1983, the victim had attended a wake with her sister Lauri. On the way home they stopped at the store. While the victim was in the store, the defendant drove up and parked behind Lauri's automobile so that she could not back out of the parking stall in front of the store.

After the victim had returned to the automobile, Lauri backed into the defendant's automobile in an effort to get the defendant to move his automobile. She described the impact as

only a "tap" or "bump." The defendant then pulled out a gun, and Lauri went into the shop to notify the security guard. The victim locked the doors on the automobile and rolled up the windows, and remained in the automobile with her children and a niece.

The defendant approached the automobile and attempted to talk with the victim, but she refused to talk with him. The defendant then fired three shots through the window, two of which struck the victim, causing severe injuries.

The defendant testified that he had not shot the victim but that the victim had shot at him and the gun had discharged several times while he was struggling with the victim. The physical facts, including the location of the broken glass from the automobile window, bullet holes inside the automobile, and the site of the entry wounds on the victim, all tended to disprove the defendant's version of the incident.

On rebuttal the State called the defendant's son, who was allowed to testify, despite an objection that the witness had been present in the courtroom while his mother had testified and despite the fact that the defendant's motion to sequester the witnesses had been sustained. The ruling on this objection is the defendant's principal assignment of error.

In overruling the objection the trial court stated: "He was here for a very brief time this morning. I—I know he left very early in the testimony. I'll overrule the objection."

The fact that a witness subject to a sequestration order was present in the courtroom briefly during the testimony of another witness does not in and of itself render his testimony inadmissible. *Clemmons v. Clemmons*, 1 Neb. (Unoff.) 880, 96 N.W. 404 (1901). It is within the discretion of the trial court to allow testimony from a rebuttal witness who is in violation of a sequestration order. *Fouse v. State*, 83 Neb. 258, 119 N.W. 478 (1909). Such discretion is abused only where it is shown that the permitted testimony prejudiced the defendant's rights. *Treppish v. State*, 126 Neb. 21, 252 N.W. 388 (1934); *Miller v. State*, 169 Neb. 737, 100 N.W.2d 876 (1960). Prejudice is established where the witness' testimony has changed or been influenced by what he heard from other witnesses. Such prejudice must clearly appear on the record. *State v. Keaton*, 61

N.C. App. 279, 300 S.E.2d 471 (1983). The appellant has failed to show that the witness' testimony changed as a result of his brief stay in the courtroom.

The defendant argues that he was prejudiced because the rebuttal witness was young and impressionable and was likely to align his testimony with that of his mother. The appellant cites *Roberts v. State*, 100 Neb. 199, 158 N.W. 930 (1916), for the proposition that relatives of a party to a suit are more susceptible to being influenced by their relative's testimony and therefore a greater reason for sequestering relatives exists. *Roberts* also points out that it is within the trial court's discretion whether to sequester any relative acting as a witness. It is for the trial court to determine the extent to which a sequestration order will be applied in a given case.

Here, the trial judge noted that the rebuttal witness had been present for only a short time during his mother's testimony. Other courts have allowed a witness subject to a sequestration order to testify if he has been in the courtroom for only a short time and has heard no substantial evidence. See, *State v. Edwards*, 257 La. 707, 243 So. 2d 806 (1971); *People v. Snell*, 74 Ill. App. 2d 12, 219 N.E.2d 554 (1966).

There was no showing in this case that the mother's testimony influenced the boy's testimony. On taking the stand the witness stated that he understood that he must tell the truth. On cross-examination he stated that no one had told him what to say.

The relationship which existed between the witness and victim did not in itself disqualify the witness' testimony; it was simply a factor to be considered by the jury in weighing the value of his testimony. See, *Shornick v. Shornick*, 25 Ariz. 563, 220 P. 397 (1923); 81 Am. Jur. 2d *Witnesses* §§ 69, 665 (1976). In this case the witness' presence in the courtroom in violation of the sequestration order went to the credibility rather than the admissibility of his testimony. *Wiseman v. State*, 168 Ga. App. 749, 310 S.E.2d 295 (1983); *Blanchard v. State*, 247 Ga. 415, 276 S.E.2d 593 (1981).

The appellant further argues that the rebuttal testimony should have been presented in the prosecution's case in chief because it only corroborated the other State's witnesses.

In *State v. Miller*, 213 Neb. 274, 278, 328 N.W.2d 769, 772 (1983), we said, " ' "In a criminal prosecution, any testimony, otherwise competent, which tends to dispute the testimony offered on behalf of the accused as to a material fact is proper rebuttal testimony." ' " *Lipscomb v. State*, 162 Neb. 417, 76 N.W.2d 399 (1956); *Pribyl v. State*, 165 Neb. 691, 87 N.W.2d 201 (1957).

The rebuttal testimony was properly admitted because it disputed the defendant's contention that the victim had shot herself. Because it tended to dispute testimony offered on behalf of the defendant as to a material fact, it was properly offered in rebuttal.

In the present case the defendant was convicted of two Class III felonies, each of which carries a minimum sentence of 1 year's imprisonment and a maximum of 20 years' imprisonment and/or a $25,000 fine. Neb. Rev. Stat. § 28-105 (Reissue 1979). The defendant was sentenced to 4 to 8 years for the first degree assault (Neb. Rev. Stat. § 28-308(1) (Reissue 1979)) and 2 years for the use of a firearm in the commission of a felony. Neb. Rev. Stat. § 28-1205(3) (Reissue 1979) requires that a sentence for use of a firearm to commit a felony be served consecutively.

The defendant claims the sentences were excessive in light of the absence of any prior felony convictions and no history of violence to anyone other than the victim in this case.

In imposing a sentence a trial court should consider inter alia the defendant's age, mentality, education, experience, and social and cultural background, as well as *his past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. State v. Stranghoener*, 208 Neb. 598, 304 N.W.2d 679 (1981).

The seriousness of the offense is an important factor in the setting of a sentence. *State v. Sare*, 209 Neb. 91, 306 N.W.2d 164 (1981); *State v. Harpster*, 199 Neb. 234, 257 N.W.2d 702 (1977); *State v. Trout*, 199 Neb. 236, 257 N.W.2d 703 (1977).

At the sentencing hearing the trial court stated:

I am convinced, Mr. Swillie, that, had the course of the wounds been just a little bit different, it's just a miracle

that Kim Morrow wasn't slain by the bullets that entered her body. . . . Had she died, I think there was enough evidence there for first-degree murder or at least second-degree. Fortunately for you and for her, she survived somehow miraculously and is alive today.

The defendant is a violent person who had beaten and injured the victim before and had threatened to kill her. Under the circumstances the sentences imposed in this case were not excessive.

The judgment of the district court is affirmed.

AFFIRMED.