STATE of South Dakota, Plaintiff
and Appellee,

v.

Myron Arnold LAIB, Defendant
and Appellant.

No. 15168.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1986.

Decided Dec. 23, 1986.

Thomas Harmon, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., on brief, Pierre, for plaintiff and appellee.

Patricia C. Riepel, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

This is an appeal from a judgment of conviction for third-degree burglary. We affirm. .

At the time of the burglary in question, defendant Myron Laib and his accomplice Brian Buck were residents of the Glory House in Sioux Falls, South Dakota. On the evening of April 20, 1985, they broke into Schoeneman's Home Center and stole two tool boxes, various tools, and two flashlights. The accomplice buried the tool boxes and tools in a pile of sand near the Glory House. Defendant Laib and Buck then took the flashlights to their rooms. The next day the accomplice confessed the crime to the director of the Glory House; he also led the director to the sand pile and dug up the tool boxes. Based on the accomplice's confession, the director retrieved the two flashlights. One flashlight was in the accomplice's locker; the other was found on a dresser in Laib's room. At that time, four other individuals shared Laib's room at the Glory House. The rooms at the Glory House are not locked, and other residents have access to the rooms.

Laib did not testify at the trial. However, the accomplice testified at length and provided details about Laib's part in the burglary. The only other evidence presented by the state which would implicate Laib was the flashlight found in his room. This evidence is strong circumstantial evidence supporting Laib's participation in the burglary.

■ Laib raises two issues on appeal. His first contention is that there was insufficient evidence presented at trial to corroborate the accomplice's testimony. Laib argues that absent the accomplice's testimony, the state has only shown that an offense was committed.

SDCL 23A–22–8 provides:

A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

It is well settled that the testimony of an accomplice need not be corroborated by evidence sufficient to sustain a conviction. The evidence need only affirm the truth of the testimony of the accomplice and establish the guilt of the defendant. *State v. Nelson*, 310 N.W.2d 777 (S.D.1981); *State v. Moellar*, 281 N.W.2d 271 (S.D.1979). There is no requirement that every fact testified to by the accomplice be confirmed by corroborating evidence. *State v. Erickson*, 315 N.W.2d 332 (S.D.1982). Circumstantial evidence can supply the necessary corroboration. *Nelson, supra.*

In reviewing the record, we find sufficient evidence to corroborate the accomplice's testimony. The finding of the flashlight in Laib's room is certainly not conclusive proof of Laib's participation in the crime; however, it does tend to affirm the truth of Buck's testimony and establish the guilt of Laib. Furthermore, one might infer from the physical evidence of the two tool boxes that two people committed the crime.

■ Laib also contends that the trial court erred in instructing the jury regarding the testimony of an accomplice. Laib proposed South Dakota Pattern Jury Instruction 1–16–7, which states in part: "You are instructed that the testimony of an accomplice ought to be viewed with *distrust* ...." (emphasis added). The trial court gave that instruction, but substituted the word "caution" for the word "distrust." Laib argues that the modified instruction

does not correctly state the law, thereby resulting in reversible error. We disagree.

This court has stated that the trial courts must give a "cautionary instruction" when there has been accomplice testimony. *State v. Beene*, 257 N.W.2d 589 (S.D.1977); *see also Grooms v. State*, 320 N.W.2d 149 (S.D.1982) and *State v. Spoonemore*, 287 N.W.2d 109 (S.D.1980). On at least three occasions we have approved the use of the word "caution" rather than the word "distrust" in such instructions. *Spoonemore, supra; Beene, supra; State v. Douglas*, 70 S.D. 203, 16 N.W.2d 489 (1944). Therefore, the trial court did not err in its instruction to the jury.

The judgment of the trial court is affirmed.

WUEST, C.J., MORGAN, J., and FOSHEIM, Retired Justice, concur.

SABERS, J., dissents.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

SABERS, Justice (dissenting).

I dissent.

South Dakota Pattern Jury Instructions (SDPJI) (Criminal)[1] Vol. II, 1–16–7[2] provides:

*Accomplice—Testimony Viewed With Caution*

You are instructed that the testimony of an accomplice ought to be viewed with *distrust*. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with great care and caution and in the light of all the evidence in the case. (emphasis added)

The comment to this instruction provides that if requested, this instruction must be given in addition to SDPJI (Criminal) 1–16–6, (now SDPJI (Criminal) 1–14–7). The authority cited for instruction 1–16–7 is *State v. Douglas*, 70 S.D. 203, 16 N.W.2d 489 (1944) and *State v. Beene*, 257 N.W.2d 589 (S.D.1977). This instruction has been followed throughout the state since January 1, 1978, as required by the *Beene* decision.

There are sound reasons for the giving of a cautionary instruction. As stated in *Beene, supra:*

"[E]xperience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source and is often given in the hope or expectation of leniency or immunity." [citations omitted.] In addition to being derived from a suspect source accomplice testimony is frequently cloaked with a plausibility which may interfere with the jury's ability to evaluate its credibility. "[A]n accomplice is not merely a witness with a possible motive to tell lies about an innocent accused but is such a witness peculiarly equipped, by reason of his inside knowledge of the crime, to convince the unwary that his lies are the truth.'"

257 N.W.2d at 590, *quoting People v. Tewksbury*, 15 Cal.3d 953, 967, 127 Cal. Rptr. 135, 145–146, 544 P.2d 1335, 1345–1346 (1976).

In *Beene*, we reversed a conviction in light of the trial court's failure to give a requested cautionary instruction dealing with accomplice testimony. 257 N.W.2d at 591. This court gave a detailed explanation as to why an accomplice's testimony should be viewed with distrust. *Id.* at 592. Characterizing an accomplice as a "corrupt source of testimony," we wrote:

'The jurors must be warned that, in effect, the accomplice may tailor the truth to his or her own self-serving mold, and that they are to weigh the testimony with that caveat in mind.'

---

**1.** The South Dakota Pattern Jury Instructions—Criminal are drafted by a committee of judges and attorneys. The instructions are updated on a continual basis for the benefit of the bench and bar.

**2.** Currently denominated: SDPJI (Criminal) 1–14–8, *Accomplice—Testimony How Viewed.*

*Id., quoting People v. Gordon,* 10 Cal.3d 460, 471, 110 Cal.Rptr. 906, 913, 516 P.2d 298, 305 (1973).

There is no doubt that all the reasons for this inherent distrust were present in the case at bar. Absent Buck's testimony, there was nothing linking the defendant to the burglary. Buck had much to gain by tailoring his testimony—a plea to a misdemeanor instead of a class IV felony.

The trial court indicated that the modification of defendant's proposed instruction #2 more accurately stated the law as it exists in the State of South Dakota. I disagree. The majority opinion provides that on at least three occasions we have approved the use of the word "caution" rather than the word "distrust" in such instructions. *Citing: State v. Spoonemore,* 287 N.W.2d 109 (S.D.1980); *Beene* and *Douglas, supra.* A fair reading of these cases challenges the accuracy of this statement.

In *Spoonemore,* the defendant's proposed accomplice instruction stated in part, "You will receive such testimony with caution, closely scrutinize it in the light of all of the other evidence in the case, and give to it such weight as you may think it is entitled to have." 287 N.W.2d at 110. The defendant's proposed instruction in *Beene, supra,* provided in part: "The testimony of an [accomplice] ... must be examined and weighed by the jury with greater care than the testimony of an ordinary witness[.]" 257 N.W.2d at 590 n. 2. In *Douglas,* the refused instruction stated in part, "... you should examine [the accomplice's] testimony with great care and caution, before you accept it as true." 70 S.D. at 223, 16 N.W.2d at 499. Webster's *New Collegiate Dictionary* 330 (1981) defines "distrust" as "to have no trust or confidence in; the lack or absence of trust: suspicion, wariness." It defines "caution" as "warning, admonishment, precaution, prudent forethought to minimize risk; one that arouses astonishment or commands attention." A review of the proposed instructions in these cases indicates to me that something more than the solitary word "caution" was nec-

essary to convey to the jury that a skeptical approach must be taken toward accomplice testimony in order to achieve the ends of justice. A fair reading of South Dakota cases supports this viewpoint.

Although I concede that many of the opinions refer to cautionary instructions and sometimes interchange the words "caution" and "distrust," it is undisputed that the pattern jury instructions uses the word distrust, and *not* caution, in the portion of the instruction at issue. In light of the above definitions, I presume that there was a precise reason for doing so. If we continue to approve the substitution of critical words such as these, this court will habitually run into problems of interpretation. More importantly, however, we will run the risk of compromising the due process rights of the accused.

Furthermore, a review of the facts in this case clearly supports the need to view the testimony of accomplice Buck with distrust, and not just with caution. The record is absolutely devoid of any evidence which tended to connect Laib with the commission of the offense, except for the accomplice's testimony concerning the two flashlights. As indicated, one flashlight was in the accomplice's locker, the other one was found on a dresser in a room that Laib shared with four other individuals at the Glory House. As further indicated, the rooms at the Glory House were not locked and other residents, including Buck, had access to them. In view of this extremely weak "corroborating testimony", the failure to instruct the jury that Buck's testimony should be viewed with distrust was clearly enough to unfairly tip the scales against the defendant. The "tale" as told by accomplice Buck simply could not be properly weighed by the jury when they were not properly instructed thereon.

I further dispute the State's claim that either prong of the two-prong test for determining the sufficiency of corroboration of accomplice testimony was substantially met in this case. As noted by the majority, the rule is satisfied if such evidence in some substantial degree (1) tends to affirm

the truth of the testimony of the accomplice, and (2) tends to establish the guilt of the defendant. The State's claim that the physical evidence of the two tool boxes tended to affirm Buck's testimony is highly questionable. The State argued that this evidence showed that the crime was committed, and secondly, that two people committed this crime. In my view, it did not tend to affirm the truth of the accomplice's testimony nor did it tend to establish the defendant's guilt. Indeed, considering all the facts of this case, the two tool boxes no more tended to establish Laib's guilt than they would tend to establish the guilt of any other person.

Accordingly, I would reverse and remand to the trial court for a fair trial.