**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Tyrane E. PHYLE, Defendant and Appellant.**

**No. 16471.**

Supreme Court of South Dakota.

Considered on Briefs May 25, 1989.

Decided Aug. 9, 1989.

Rehearing Denied Sept. 14, 1989.

Wade A. Hubbard, Asst. Atty. Gen.; Roger A. Tellinghuisen, Atty. Gen., on brief Pierre, for plaintiff and appellee.

Leon J. Vander Linden and Kent Delaney Webster, for defendant and appellant.

WUEST, Chief Justice.

Tyrane E. Phyle (defendant) was found guilty of first degree robbery, as defined by SDCL 22–30–6. He later pleaded guilty to being a habitual offender, in violation of SDCL 22–7–8. Defendant now appeals his conviction on the charge of first degree robbery claiming the evidence presented at trial was insufficient to either sustain a finding of guilt beyond a reasonable doubt or corroborate his accomplice's testimony. He also alleges that the trial court erred in denying his motion for a mistrial after a witness testified a second time at the conclusion of the other state's witnesses' testimony. The trial court had previously ordered that this particular witness testify prior to receiving the testimony of the other witnesses. We affirm defendant's conviction.

On the evening of April 23, 1988, a liquor store in Claire City, South Dakota, was robbed by a man wielding a .12 gauge shotgun. The liquor store was attended by an elderly lady named Gertrude Wolfe (Wolfe). The robbery occurred between 9:30 and 10:00. The robber absconded with approximately $200. Although Wolfe later stated the offender was approximately 5 feet 8 inches tall, she was unable to describe his facial characteristics because his face was masked by a blue bandanna with white polka dots. Wolfe also commented that the robber attempted to take the entire cash register drawer. When he encountered difficulty in doing so, he grabbed the cash therein and ran out the door.

Between 9:00 and 9:30 that same evening, Doug Gutzmer (Doug) and Danny Ringsaker (Danny) arrived in Claire City to visit Danny's brother, Clark Ringsaker (Clark). While driving through the town, Doug and Danny noticed a small, yellow pickup parked on the wrong side of the street near the liquor store. They observed an individual seated in the pickup on the passenger side. Shortly thereafter, they again drove by the liquor store and again observed the person seated in the pickup. Both Doug and Danny later stated that they believed the individual was "acting skittish." After their second observation, they drove to Clark's home. The individual seated in the pickup was later identified as Larry Phyle (Larry), defendant's brother.

Shortly after Doug and Danny arrived at Clark's home, the local "fire phone" rang. Clark answered the phone and was informed that the liquor store had just been robbed. Acting on their suspicions that the person seated in the yellow pickup was somehow involved in the robbery, Doug, Danny and Clark immediately drove to the liquor store. When they arrived at the liquor store, the yellow pickup and the person seated therein were gone. Shortly thereafter, they received a tip from a passerby that a yellow pickup had been seen traveling west on a gravel road just outside of town. Acting on this tip, the three men eventually caught up with the yellow pickup. Following closely behind the pickup, Clark then dimmed and brightened his headlights a few times, but there was no response from the pickup. Clark then drove alongside the pickup and forced it off the road. Sensing danger, Doug, Danny and Clark then proceeded to a nearby farm and the pickup followed them.

Upon arriving at the farm, Doug entered the house and obtained a rifle. By that time, the pickup had driven onto the farm yard. As Larry exited the pickup, Doug pointed the rifle at him and told him to remain still. Larry inquired as to why he had been forced off the road. He was told by one of the three men that they had suspected him of robbing the liquor store. After examining the pickup and discovering a broken .12 gauge shotgun in the pickup box, Clark summoned the Roberts County Sheriff's Department. Deputy Sheriff Roger Wright (Wright) subsequently arrived at the farm. Wright was informed by Doug and Danny that they had seen Larry in front of the liquor store shortly before it had been robbed. They, along with Clark, also indicated that there had been two people in the pickup during the chase, but only Larry was found therein when it arrived at the farm.

Larry subsequently was taken to the Roberts County Jail in Sisseton, South Dakota. There, he was questioned by Sheriff Neil Long (Long). Initially, Larry denied having any knowledge of or involvement in the liquor store robbery. However, he later stated that he had been the "wheel man" in the robbery and eventually implicated his brother, defendant. Larry pleaded guilty to aiding and abetting robbery in the first degree. Defendant subsequently was arrested in Oklahoma. After a jury trial, he was convicted of first degree robbery.

On appeal, defendant contends that the evidence presented at trial was insufficient to either sustain a finding of guilt beyond a reasonable doubt or to corroborate Larry's testimony. His appeal arises from the trial court's denial of his two motions for a judgment of acquittal. These motions were made at the close of the State's case.

SDCL 23A–23–1 provides, in pertinent part:

A court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more offenses charged in an indictment or information after the evidence on either side is closed, if the evidence is insufficient to sustain a conviction of the offense or offenses.

In *State v. Jenner*, 434 N.W.2d 76 (S.D. 1988), we had the opportunity to discuss whether a trial court had erred in denying a defendant's motion for judgment of acquittal. In addressing this issue, we stated:

Our standard of review on denial of this motion is whether the State made out a prima facie case from which the jury could reasonably find the defendant guilty. Sufficiency of trial evidence rests on whether the evidence, if believed by the jury, is sufficient to find guilt beyond a reasonable doubt. In making such determination, this court will accept evidence and the most favorable inferences that can be fairly drawn from that evidence which will support the guilty verdict. (Citations omitted).

*Id.* at 81 (*quoting State v. Weddell*, 410 N.W.2d 553, 555–56 (S.D.1987)).

We believe that in the absence of the testimony of the accomplice (Larry), the evidence was not sufficient to find guilt beyond a reasonable doubt. However, the testimonial evidence of the accomplice and all evidence corroborating such testimony, if believed by the jury, is sufficient evidence to meet this standard. In reaching this conclusion, we note the significance of corroborative evidence as in relates to accomplice testimony. SDCL 23A–22–8 provides:

> A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

In *State v. Reutter*, 374 N.W.2d 617 (S.D. 1985), we expounded on this requirement of corroborative evidence, stating:

> Accomplice testimony need not be corroborated by evidence sufficient to sustain a conviction. The mandate of [SDCL 23A–22–8] is satisfied where the corroborative evidence in some substantial degree tends to affirm the truth of the testimony of the accomplice and establish the guilt of the accused. There is no requirement that every material fact testified to by the accomplice be confirmed by corroborative evidence. The accused himself can provide the necessary corroboration. Finally, whether corroboration is sufficient is a question for the jury.

*Id.* at 626 (citations omitted). *See also State v. Feyereisen*, 345 N.W.2d 58 (S.D. 1984). We also have recognized the well-settled principle that circumstantial evidence can satisfy the requirements of corroboration. *Id.* at 60.

Although the evidence corroborating the testimony of the accomplice in this case is largely circumstantial, we nevertheless believe that it is sufficient to satisfy the mandate of SDCL 23A–22–8. The record shows two people, namely, Doug and Danny, testified they saw Larry sitting in the yellow pickup in front of the liquor store prior to the robbery. Larry was sitting on the passenger side of the vehicle. In addition, Doug, Danny and Clark testified that they saw two people in the pickup while they were chasing it. Although Doug and Danny later admitted they could have mistaken a rear window decal for the second person, Clark did not waiver from his position. This evidence indicates that two people participated in robbing the Claire City liquor store. Furthermore, the victim of the robbery told investigators one day after the robbery that the robber was approximately 5 feet 8 inches tall. Also, the victim testified the robber was not wearing glasses at the time of the robbery. The record shows that Larry is 6 feet 1 inch tall and wears glasses, while the defendant is 5 feet 10 inches tall and does not wear glasses. The victim's description of the robber more accurately describes the defendant than it does Larry.

Although it is clear that this evidence, taken alone, would not sustain defendant's conviction, we believe it tends to affirm the truth of Larry's testimony. The jury chose to believe that the sum of this evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt. For these reasons, we believe that the trial court properly denied defendant's motions for judgment of acquittal.

■ The defendant's second contention concerns the trial court's decision to allow Wolfe to testify twice. Prior to the trial, the state moved the trial court to allow Wolfe to remain in the courtroom throughout the trial. Defendant resisted this mo-

tion, arguing that it would be prejudicial to him if a witness for the state was allowed to be present in the courtroom while the state's other witnesses were testifying. Defendant was concerned that Wolfe might change her testimony after hearing that of the other witnesses. The trial court granted the state's motion, thereby allowing Wolfe to be present in the courtroom throughout the trial. However, the trial court further ordered that Wolfe's testimony be presented first so she would not have the benefit of hearing the other witnesses' testimony.

After testifying, Wolfe remained in the courtroom during the testimony of the state's other nine witnesses. At that point the state recalled Wolfe as the witness and she again testified. Defendant immediately moved the trial court for a mistrial, which was denied. He now submits that the trial court violated its own pre-trial order, and in doing so, allowed the state to unfairly improve its position with the jury. We disagree.

This situation is closely related to one in which a sequestration order is violated by a witness, but the trial court nevertheless permits the testimony of that sequestered witness. Under such circumstances, it is within the discretion of the trial court to allow testimony from such a witness. *State v. Swillie*, 218 Neb. 551, 357 N.W.2d 212, 215 (1984). A trial court abuses its discretion in permitting such testimony only where it is shown that said testimony was prejudicial to the defendant. *Id.* "Prejudice is established where the witnesses testimony has changed or been influenced by what he heard from other witnesses." *Id.*

We believe that under the circumstances presented in this case, it was within the trial court's discretion to allow Wolfe to testify a second time after she had heard the testimony of the other state's witnesses. Furthermore, we believe the trial court did not abuse its discretion in permitting such testimony because it is clear that such testimony was not prejudicial to the defendant. The propriety of allowing Wolfe to testify a second time after hearing the tes-

timony of the other state's witnesses might concern us if the defendant had shown Wolfe's testimony changed or was influenced by what she heard from the other witnesses. The record, however, indicates that Wolfe's second appearance involved an identification demonstration with Larry as the subject. Her testimony did not conflict with that which she had given earlier and it was distinct from the other witnesses testimony. Accordingly, we cannot say that the defendant was prejudiced by Wolfe's testifying a second time or that the trial court abused its discretion in allowing this testimony.

We affirm defendant's conviction.

MORGAN and MILLER, JJ., concur.

SABERS, J., specially concurs.

HENDERSON, J., concurs in result.

SABERS, Justice (specially concurring).

I concur because I believe the evidence was sufficient, though barely, to corroborate the self-serving testimony of the self-proclaimed "accomplice." The questions were properly presented to the jury by adequate instructions, and the jury resolved the questions against defendant. *Compare* with the situations presented in *State v. Bradley*, 431 N.W.2d 317, 325 (S.D.1988); *State v. Rufener*, 401 N.W.2d 740, 746 (S.D.1987); *State v. Byrum*, 399 N.W.2d 334, 338 (S.D.1987); *State v. Laib*, 397 N.W.2d 658, 660 (S.D.1986).

HENDERSON, Justice (concurring in result).

Neither Appellant's brief nor reply brief cites any case law or statutory authority to buttress the claimed error in the trial court's denial of a motion for mistrial. Therefore, substantive treatment of this issue is not necessary as it is waived. *Kostel Funeral Home, Inc. v. Duke Tufty Co.*, 393 N.W.2d 449 (S.D.1986), *Corbly v. Matheson*, 335 N.W.2d 347 (S.D.1983).