STATE of South Dakota, Plaintiff
and Appellee,

v.

Alvin H. GOODROAD, Defendant
and Appellant.

No. 16425.

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1989.

Decided April 25, 1990.

Roger A. Tellinghuisen, Atty. Gen. and Frank E. Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Sidney B. Strange, Strange & Palmer, P.C., Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Alvin H. Goodroad (Goodroad) was indicted, by the Hughes County Grand Jury, on one count of possession of marijuana (more than ½ pound, but less than a pound) under SDCL 22–42–6, and one count of distribution of marijuana (more than one ounce, but less than ½ pound) under SDCL 22–42–7. Goodroad was convicted of both counts after a jury trial which lasted from August 4 to August 8, 1988, and later sentenced to serve two concurrent 18 month terms in the state penitentiary. On appeal Goodroad argues:

1. He could not be convicted of both possession and distribution of the same marijuana;

2. State witness James Feeney was not qualified to testify that the substance was marijuana;

3. The verdicts were inconsistent, as they dealt with two different quantities of marijuana;

4. Testimony that Feeney's plea agreement required him to testify truthfully (or else) was inadmissible;

5. Testimony that a third party had pleaded guilty on the basis of information provided by Feeney was inadmissible;

6. Evidence relating to a different transaction involving Goodroad was inadmissible;

7. A defense witness, Scott Erickson, should have been forced to testify; and,

8. James Feeney was an accomplice of Goodroad, hence corroboration of his testimony was required.

–Holding–

We reverse on the basis of Issues 4 and 5. Due to our decision, we deem it unnecessary to address issues three and eight.

FACTS

In February, 1988, Agent Doug Lake of the Department of Criminal Investigation (DCI) was advised by a fellow DCI agent that a person arrested in a drug investigation had implicated James Feeney (Feeney) in a marijuana transaction. An investigation followed, which led to Feeney's arrest. Feeney pleaded guilty to a felony marijuana possession charge as part of a plea bargain which called for him to name persons with whom he had trafficked drugs. Feeney identified Goodroad as his main source of marijuana in Sioux Falls.

According to Feeney, he bought a half pound of marijuana from Goodroad every 6 to 8 weeks. Trust had developed between them to the point that Feeney was supplied with the drug on a "credit" basis. To verify this information, Lake asked Feeney to telephone Goodroad as he would in their normal course of business. If Goodroad had a supply of marijuana on hand Feeney was to offer to buy, if Goodroad had none, he was to offer to sell (a tactic known as "turnaround"). On March 11, 1988, Feeney called Goodroad and arranged to sell marijuana to him. An arrest leading to Goodroad's conviction resulted. This conviction was affirmed in *State v. Goodroad*, 442 N.W.2d 246 (S.D.1989).

Feeney, after making the call, informed Lake that he had purchased marijuana from Goodroad in Pierre, on November 19, 1987. According to Feeney, he met Goodroad in a local bar and they proceeded to Goodroad's hotel room. A man named John Frederickson was present most of the time, but Goodroad and Feeney transacted their business when Frederickson left the room. Goodroad took a bag of marijuana from a suitcase and handed it to Feeney. Feeney and his wife used part of the mari-

juana and sold the rest. None was left when Feeney, himself, was arrested.

## DECISION

I. *Election of Charges—Possession/Distribution.*

■ Goodroad first argues that the prosecutor should have elected to pursue one, not both, of the charges against him. We disagree. Possession is not an essential element of delivery. *State v. Kucera*, 244 N.W.2d 571, 573 (Iowa 1976) (*citing State v. Grady*, 215 N.W.2d 213, 214 (Iowa 1974)). As the Supreme Court of Connecticut observed in *State v. Devino*, 195 Conn. 70, 485 A.2d 1302, 1305 n. 5 (1985):

> The realities of the illegal drug trade help emphasize the difference between possession and sale of narcotics. "Distribution and possession are distinct criminal offenses, not only in terms of the length of time each lasts, but also in terms of what particular stage of drug trafficking each represents." *State v. Davis*, 68 N.J. 69, 82, 342 A.2d 841 (1975). *See, Albrecht v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 71 L.Ed. 505 (1927). Nor does the fact that these two offenses are often committed in tandem prevent their being separately proscribed and punished.

Further, *Id.* at note 6:

> Because the offenses of illegal possession of narcotics and illegal sale of narcotics are different offenses under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)), we need not determine whether the statutes at issue contain legislative authorization of multiple punishments.

Looking to SDCL 22-42-1(3), we find that "delivery" is defined as "the actual or constructive transfer of a controlled drug, substance, or marijuana whether or not there exists an agency relationship." "Distribute" is defined as "the delivery of a controlled drug, substance or marijuana."

SDCL 22-42-1(5). A person may distribute without possession.

■ Further, if possession of marijuana is not an essential element of distribution of marijuana, it is not a lesser included offense. *See, e.g., State v. Oien*, 302 N.W.2d 807, 809 (S.D.1981) (distribution of a controlled substance may be committed in the absence of illegal possession). In order to meet the legal test of a necessarily included offense, elements of the included offense must be fewer in number than elements of the greater offense, the penalty for the included offense must be less than the greater offense, and the two offenses must contain common elements so that the included offense must be such that the greater offense cannot be committed without also committing the lesser. Here, the third requirement is not met, as demonstrated above.[*]

As distribution and possession of marijuana are distinct offenses, and possession is not a lesser included offense encompassed by distribution, Goodroad was properly charged and convicted on both counts.

II. *Feeney's Identification of the Marijuana.*

■ This argument is unsound, on these facts. Feeney testified that he was a heavy, daily user of marijuana over a period of years who had to sell it in order to support his habit. He was clearly qualified under *People v. Belleville*, 56 Mich.App. 275, 224 N.W.2d 61 (1974), to testify as to the material's nature. He and his wife smoked part of the relevant substance themselves. Of special interest is his testimony as to the "affect" (sic) of marijuana as a distinguishing factor. He knew whereof he spoke. Where no quantity of the substance in question is available for chemical analysis, a lay witness' identification of the substance as a particular drug is a common evidentiary factor. *State v. Watson*, 437 N.W.2d 142, 146 (S.D.1989). In such cases, courts stress "the necessity of significant past experience with the drug

---

[*] A second, factual test must also be passed before a crime is deemed lesser included offense. *See, State v. Rich*, 417 N.W.2d 868, 871 (S.D.1988); *State v. Heumiller*, 317 N.W.2d 126, 132 (S.D. 1982). As the legal test has not been met, we find it unnecessary to review the factual test. *State v. McNamara*, 325 N.W.2d 288, 290 n. 2 (S.D.1982).

in question before a positive identification can be made." *Watson,* 437 N.W.2d at 147. *See also, United States v. Meeks,* 857 F.2d 1201 (8th Cir.1988); *United States v. Atkins,* 473 F.2d 308 (8th Cir.1973). Feeney possessed such significant past experience. Goodroad's pretrial motion to suppress such testimony and his objection during trial were properly denied.

III. We do not address this issue.

IV. and V. *Evidence Concerning Feeney's Plea Agreement Was Erroneously Admitted* and *Testimony That A Third Party Had Pleaded Guilty In Another Case Was Likewise Inadmissible.*

■ We address Issues 4 and 5 together as they are both grounds for reversal. Goodroad's fourth argument is that the trial court should not have permitted the State to vouch for the credibility of Feeney. We agree.

At trial, Agent Lake was permitted to testify, over defense counsel's objections, not only that Feeney had promised, pursuant to a plea bargain, to testify truthfully, but that Feeney faced prosecution for "all of the drug deals he's admitted" if he lied. This testimony was elicited before Feeney testified. Later, after Feeney testified and was cross-examined, the prosecutor elicited testimony from Feeney that he would be prosecuted for additional charges if he was untruthful. In his closing argument, the prosecutor returned to the point:

> There's a number of things that Feeney did in his life that should make you mad, but one thing he's done and that's clear is when he cut a deal with the State that said I will stake my freedom on telling you the truth, I know that my plea bargain will die if you catch me lying or if anyone catches me lying and lays it out.

This was beyond prosecutorial bounds, as the Federal Ninth Circuit Court of Appeals has observed:

> A strong case can be made for excluding a plea agreement promise of truthfulness. The witness, who would otherwise seem untrustworthy, may appear to have been compelled by the prosecutor's

threats and promises to come forward and be truthful. The suggestion is that the prosecutor is forcing the truth from his witness and the unspoken message is that the prosecutor knows what the truth is and is assuring its revelation.

Conveying this message explicitly is improper vouching. *Lawn v. United States,* 355 U.S. 339, 359–60 n. 15, 78 S.Ct. 311, 323 N. 15, 2 L.Ed.2d 321 (1958), *Gradsky v. United States,* 373 F.2d 706, 710 (5th Cir.1967) (improper to imply government checks for credibility before using witness). We conclude that conveying it by implication is equally improper. . . .

USING THE PROMISE IN ARGUMENT

In addressing the third issue we consider the use which a prosecutor may make of a promise to testify truthfully once a plea agreement has been admitted.

The prosecutor may not tell the jury that the government has confirmed a witness's credibility before using him. *Gradsky v. United States,* supra. He should be no more able to indicate that the government has taken steps to compel the witness to be truthful. Both of these arguments involve improper vouching because they invite the jury to rely on the government's assessment that the witness is testifying truthfully.

As Judge Friendly declared, prosecutorial remarks implying that the government is motivating the witness to testify truthfully:

> . . . are prosecutorial overkill.

*United States v. Roberts,* 618 F.2d 530, 536 (9th Cir.1980). Prejudicial error, under *Roberts,* does not result from the use of a witness' plea agreement promise to be truthful:

> The mere statement in a plea agreement that a witness promises to speak "truthfully" does not by itself constitute improper vouching. *[People v.] Buschard,* 109 Mich.App. [306] at 316, 311 N.W.2d [759] at 764 [1981]. This "is the same promise he or she makes when called as a witness at trial." *United States v. Leslie,* 759 F.2d 366, 378 (5th Cir.1985). Similarly, a statement in a plea agree-

ment that perjury charges will be brought if the defendant makes any false statement under oath is law already known by most jurors even without instruction by the court.

Thus, in order to find reversible error for admittance of a plea agreement on grounds of improper vouching there must be additional improper insinuations by the government.

*State v. Chakouian,* 537 A.2d 409, 412 (R.I.1988). The Rhode Island Supreme Court, in *Chakouian,* specifically adopted the *Roberts* scenario as an illustration of such an additional improper insinuation, i.e., where the government witness' plea bargain promise of truthfulness was combined with threats of prosecution if he lied. *Chakouian,* at 412–413.

Here, we have reversible error. The prejudice to Goodroad of these tactics greatly outweighs their probative value. *See* SDCL 19–12–3.

■ In addition to allowing improper bolstering of Feeney's testimony through repetitive harping on the threat of additional prosecution for Feeney's other offenses, the trial court further erred. It permitted Agent Lake to testify that a third party, Rick Remund, who did not testify after pleading guilty to an unrelated felony, corroborated Feeney's statements about other marijuana on other occasions. This testimony was highly prejudicial, in that it tainted Goodroad with another's guilt in unrelated criminal activity, yet its relevance to the present case was minimal. This evidence should have been deemed inadmissible under SDCL 19–12–3 (modeled after Federal Rule of Evidence 403), which requires exclusion of evidence, even if relevant, where its probative value is substantially outweighed by, *inter alia,* the danger of unfair prejudice, confusion of the issues or misleading the jury. Admission of hearsay testimony that a nontestifying third party had pleaded guilty to a felony and corroborated state witness Feeney's statements about unrelated marijuana dealing took the jury too far afield. Evidence of Remund's guilty plea and corroboration of Feeney in an unrelated case was inadmissi-

ble. *See, Whitted v. State,* 362 So.2d 668, 672–3 (Fla.1978), *Hirsch v. State,* 279 So.2d 866, 869 (Fla.1973).

## VI. Evidence Relating To A Different Transaction Involving Goodroad and Feeney Was Admissible.

■ Goodroad next argues that audio and video tapes of a different transaction, between Feeney and himself, together with marijuana seized later was erroneously admitted. We disagree, for reasons recently set out in *State v. Goodroad,* 442 N.W.2d 246 (S.D.1989) *(Goodroad I):*

> [S]aid other acts evidence shows a common scheme or plan embracing previous dealings so related to each other that proof of such acts tends to establish the present change.

*Goodroad I,* at 250. Here, Goodroad is complaining that evidence relating to the crime for which he was convicted in *Goodroad I* was admitted in the current case. Under SDCL 19–12–5, this evidence was admissible. While damaging to Goodroad's cause, the evidence did not persuade by illegitimate means in this case, and provided the state with no unfair advantage. *State v. Kerkhove,* 423 N.W.2d 160, 163 (S.D.1988).

## VII. Refusal to Force Scott Erickson to Testify.

■ Goodroad asserts that a proposed defense witness, Scott Erickson, whom this argument hinges on and whom Goodroad attempted to call for testimony as to Feeney's actual source of marijuana, should have been forced to testify as he was protected by immunity granted by the state. It is clear from the trial transcript that Erickson's offer of immunity was infirm. According to the prosecutor, Erickson was not candid when he provided information leading to the offer of immunity. This made his testimony likely to incriminate him, without protection. Erickson had more than sufficient fear of prosecution to invoke his Fifth Amendment privilege. "It is for the court to say whether his silence is justified." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed.

1118 (1951). On these facts, we find no error.

VIII. We do not address this issue.

We reverse and remand for new trial.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

In view of our reversal and remand for a new trial on Issues IV and V, I see no reason to write on any of the other issues.