**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Kip SONDREAL, Defendant and Appellant.**

**No. 16903.**

Supreme Court of South Dakota.

Considered on Briefs May 23, 1990.

Decided July 25, 1990.

Thomas H. Harmon, Deputy Atty. Gen., Pierre (Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief), for plaintiff and appellee.

Brian W. Jones of Heidepriem, Widmayer, Zell & Jones, Miller (Scott N. Heidepriem of Heidepriem, Widmayer, Zell & Jones, Miller, on the brief), for defendant and appellant.

MILLER, Justice.

In this decision we affirm convictions of distribution of a controlled substance and conspiracy to distribute a controlled substance, holding that (1) cocaine is, as a matter of law, a controlled substance; (2) conflicts in State's evidence do not warrant reversal; (3) there was adequate corroboration of an accomplice's testimony; and (4) subsequent return of a controlled substance to the original deliverer may be a distribution thereof under our statute.

## FACTS

Kip Sondreal was indicted on one count of conspiracy to distribute a controlled substance in violation of SDCL 22–3–8[1] and

---

1. SDCL 22–3–8 provides, in part:

 If two or more persons conspire, either to commit any offense against the state of South Dakota, or to defraud the state of South Dakota, or any county, township, school district or municipal corporation in any manner or for any purpose, and one or more of the parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be guilty as follows[.]

22–42–2,[2] and one count of distribution of a controlled substance in violation of SDCL 22–42–2. He was convicted by a jury and this appeal followed. We affirm.

Brian Hanson (Hanson), an admitted drug user and dealer, had been directly involved in the conspiracy and distribution of cocaine which led up to the arrest and conviction of Sondreal. Hanson agreed to cooperate with law enforcement, testify at trial, and plead guilty to conspiracy to distribute cocaine, pursuant to an agreement to grant him use immunity from prosecution for all other drug related crimes.

Hanson had been involved in dealing drugs with Marc Hanson (no relation). They worked as "partners." Also involved in this drug ring was Mark Small, who had a cocaine supplier in Minnesota. In February or March, 1989, Hanson and Sondreal used cocaine together for the first time. Hanson testified that thereafter they met almost every other day to use cocaine.

In March, 1989, Sondreal and Hanson discussed the possibility of Sondreal financing a cocaine deal.[3] On March 24, 1989, the Hansons and Small drove to Minnesota to purchase cocaine from Ed Swart. They had previously accumulated $5600 for the drug transaction. Hanson invested $200, Eric Fodness, a friend, $900, and Sondreal, $4500. Hanson testified that during this time "dealing drugs" was his only means of income; it was his "life." Although they paid the entire $5600 to Swart, they were unable to obtain the amount of cocaine desired. Swart agreed to later send or supply the rest of the cocaine. Although their intentions were to purchase four ounces of cocaine on this trip, they acquired only one ounce. Consequently, they were unable to give Sondreal the entire amount due for his $4500 investment. They did provide him with eight grams, but did not tell him they were unable to obtain the rest. Instead, Hanson informed Sondreal that he had "stashed" the remainder.

In early April, the Hansons went to Sioux Falls and picked up a second ounce of cocaine which Swart had sent by bus. Hanson gave Sondreal a half ounce (14 grams) of this amount. Two days later, Sondreal returned ten grams to Hanson, complaining of the quality.[4] On or about April 22, 1989, Hansons returned to Minnesota and obtained a third ounce of cocaine from Swart.

About this time Hanson became employed in Alpena, South Dakota. Sondreal began calling him at work demanding the return of his money. Early one morning, he entered Hanson's house, unannounced, and woke him up asking about the money. Prior to leaving he poked a hole in one of Hanson's stereo speakers.

On May 4, 1989, Hanson was called to the Huron Police Station where he made a general admission of his involvement in purchasing and selling drugs. He also re-

**2.** SDCL 22–42–2 provides:

Except as authorized by this chapter or chapter 34–20B, no person may manufacture, distribute or dispense a substance listed in Schedules I or II; possess with intent to manufacture, distribute or dispense, a substance listed in Schedules I or II; create or distribute a counterfeit substance listed in Schedules I or II; or possess with intent to distribute a counterfeit substance listed in Schedules I or II. A violation of this section is a Class 4 felony. However, the distribution of a substance listed in Schedules I or II to a minor is a Class 2 felony. A first conviction under this section shall be punished by a mandatory sentence in the state penitentiary of at least thirty days, which sentence may not be suspended. A second or subsequent conviction under this section shall be punished by a mandatory penitentiary sentence of at least one year, which sentence may not be suspended. However, a first conviction for distribution to a minor under this section shall be punished by a mandatory sentence in the state penitentiary of at least one hundred twenty days, which sentence may not be suspended. A second or subsequent conviction for distribution to a minor under this section shall be punished by a mandatory sentence in the state penitentiary of at least two years, which sentence may not be suspended. A civil penalty may be imposed, in addition to any criminal penalty, upon a conviction of a violation of this section not to exceed ten thousand dollars.

**3.** Hanson had been involved in other cocaine deals and was being supplied by Ed Swart of Plymouth, Minnesota. They were originally introduced by Mark Small.

**4.** It was this action by Sondreal for which he was indicted and convicted for distribution of cocaine.

vealed his involvement with Sondreal. Pursuant to an interview with Captain David Rand, Hanson went home, recovered and turned over to Rand a portion of the ten grams of cocaine which Sondreal had previously returned to him. That same afternoon, Captain Rand had Hanson call Sondreal hoping to telephonically record some discussion regarding the cocaine transaction. Sondreal avoided specific drug discussion, but did agree to meet Hanson at a local restaurant. Hanson was provided with $1000 in marked money. (The police also attempted to equip him with a body mike in order to record the conversation, but the equipment failed to work.) At the meeting, the money was exchanged and Sondreal was arrested by the police who were in the immediate proximity.

The following day Sondreal called Hanson at his place of employment and told him that he had better change his story. Sondreal also told Hanson in this phone conversation that, "[w]hen drug deals go bad, people die...."

At trial, Sondreal testified that the $4500 was a loan to Hanson for converting his van. He admitted that he did not take anything as security or require a promissory note to be signed by Hanson. He testified that he had no idea Hanson would buy drugs with the money.

## DECISION

### WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION.

Sondreal has raised four specific arguments in support of his issue that there was insufficient evidence to sustain the conviction. He has asserted that (1) there was insufficient evidence to establish the identity of the substance allegedly distributed; (2) the testimony of State's witnesses was so contradictory as to not lead to any conclusion; (3) there was no corroboration of the accomplice's testimony on the conspiracy charge; and (4) the charge of distribution was not supported by the evidence.

Generally, in determining the sufficiency of the evidence on appeal, the question presented is "whether there is evidence in the record, which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt.... In making this determination, the Court will accept that evidence, and the most favorable inferences fairly drawn therefrom, which will support the verdict." *State v. Miller*, 429 N.W.2d 26, 38 (S.D.1988) (citations omitted). *See also State v. Jenner*, 451 N.W.2d 710 (S.D.1990).

### A. IDENTITY OF SUBSTANCE

■ Sondreal contends that evidence of the identity of the substance alleged to have been distributed was insufficient. He is not contesting that the substance introduced by State was, in fact, cocaine. (State's expert witness testified to that.) He argues that cocaine is not a substance listed in either Schedule I, *see* SDCL 34–20B–12, –13 & –14, or Schedule II, *see* SDCL 34–20B–16 and –17. Consequently, he alleges the evidence presented was insufficient to sustain a conviction.

The case of *State v. Habbena*, 372 N.W.2d 450 (S.D.1985), is dispositive of this issue. Therein we clearly stated, "[c]ocaine is a Schedule II substance under SDCL 34–20B–16." *Id.*, at 458.

### B. CONFLICTS IN STATE'S EVIDENCE

■ Next, Sondreal contends that the testimony of State's witnesses was so contradictory that no reasonable conclusion could be drawn therefrom.

■ Although there were some inconsistencies in the testimony of certain witnesses, the significance is minor. These inconsistencies were heard by and argued to the jury. The jury remains the exclusive judge where conflicting testimony arises. *State v. Herman*, 253 N.W.2d 454 (S.D. 1977); *State v. Shank*, 88 S.D. 645, 226 N.W.2d 384 (1975).

### C. CORROBORATION OF ACCOMPLICE

■ With regard to the conspiracy charge, Sondreal contends there was no

evidence corroborating the testimony of Hanson, an alleged accomplice.

■ SDCL 23A–22–8 provides: "A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." Whether or not evidence existed corroborating Hanson's testimony was a question for the jury. *State v. Phyle*, 444 N.W.2d 380 (S.D.1989). In *Phyle*, we stated:

'Accomplice testimony need not be corroborated by evidence sufficient to sustain a conviction. The mandate of [SDCL 23A–22–8] is satisfied where the corroborative evidence in some substantial degree tends to affirm the truth of the testimony of the accomplice and establish the guilt of the accused. There is no requirement that every material fact testified to by the accomplice be confirmed by corroborative evidence. The accused himself can provide the necessary corroboration. Finally, whether the corroboration is sufficient is a question for the jury.'

444 N.W.2d at 382 (citing *State v. Reutter*, 374 N.W.2d 617, 626 (S.D.1985)).

State asserts, and we agree, that the following evidence is corroborative of Hanson's testimony:

1. The testimony of Captain Rand and Division of Criminal Investigation Agent Doug Lake relating the telephone conversation between Hanson and Sondreal. The officers stated that Hanson called Sondreal, they obviously knew each other, and that they were dealing with money (as evidenced by their subsequent meeting at a specific restaurant).

2. Sondreal took the $1000 from Hanson, evidencing some type of debt owed by Hanson to Sondreal.

3. Phone records were introduced at trial and showed a pattern of arranging drug deals. Phone bills of Mark Small coincided with trips to the home of Ed Swart in Plymouth, Minnesota.

4. Sondreal's phone bills corroborated Hanson's assertion that he called him at his place of work in Alpena.

5. Sondreal himself admitted that he gave a large amount of cash to Hanson without requiring any type of security.

6. Sondreal admitted to felony use of cocaine.

We believe this evidence corroborated Hanson's testimony. The sum of this evidence was sufficient to prove Sondreal's guilt beyond a reasonable doubt. That was clearly within the prerogative of the jury. *Phyle, supra.*

### D. SUFFICIENCY OF EVIDENCE OF DISTRIBUTION

■ Finally, Sondreal contends that the charge of distribution under SDCL 22–42–2 was not supported by the evidence. Essentially, he argues that the poor quality cocaine he received from Hanson and subsequently returned two days later does not amount to "distribution" by him under our law. He relies on Black's Law Dictionary as authority for the definitions of "distribution" and "distributor." He asserts that there cannot be "distribution" when cocaine is returned to the original "distributor."

The jury was instructed by the trial court as to the statutory meaning of the words "distribute," "deliver" and "delivery:"

The word 'distribute' as used in these instructions means to deliver a controlled drug or substance. 'Deliver' or 'delivery' means the actual or constructive transfer of a controlled drug or substance whether or not there exists any agency relationship.

The authoritative source of this instruction is SDCL 34–20B–1(6) and (9). Paragraph 1(9) additionally defines "distributor" as, "a person who delivers a controlled drug, substance or marijuana." "Whenever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs except where a contrary intention plainly appears." SDCL 2–14–4. We are bound by these definitions unless evidence exists to suggest that the legisla-

ture intended a different meaning. *Northwestern Public Ser. Co. v. Housing, Etc.*, 320 N.W.2d 515 (S.D.1982). Since no contrary intention is plainly apparent, we hold that the trial court properly instructed the jury.

Therefore, under our statute, the transfer of a controlled substance, cocaine, by Sondreal to Hanson constituted a distribution. The jury properly found the offense was committed.

## E. SUPPLEMENTAL ISSUE

 Lastly, on May 21, 1990, two days before the hearing by this Court, Sondreal filed a supplemental brief in which he raised a new issue; namely, that the testimony and State's arguments and references to Hanson's plea agreement were prosecutorial misconduct amounting to reversible error under our holding in *State v. Goodroad*, 455 N.W.2d 591 (S.D.1990).

The authorization to submit supplemental authority is found at SDCL 15–26A–73, which provides:

> Whenever a party desires to present late authorities, newly enacted legislation, or other intervening matters that were not available in time to have been included in his brief in chief, he shall serve a copy thereof upon opposing counsel and file fifteen copies of the supplemental brief, restricted to such new matter and otherwise in conformity with this chapter, up to the time the case is called for hearing, or by leave of Court thereafter.

We observe that rather than submitting new authority, Sondreal has in fact presented a new issue which was not previously briefed by him or State. Therefore, the supplemental brief was not authorized under the statute. We hasten to point out, however, that there are a number of distinctions between this case and *Goodroad, supra, (e.g.* failure to preserve issues for appeal). *State v. Dornbusch*, 384 N.W.2d 682 (S.D.1986); *State v. Lachowitzer*, 314 N.W.2d 307 (S.D.1982).

Affirmed.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., concurs in part and dissents in part.

SABERS, Justice (concurring in part and dissenting in part).

I concur in all respects except as to Issue D., SUFFICIENCY OF EVIDENCE OF DISTRIBUTION. I have no trouble affirming the conviction of the defendant for conspiracy to distribute a controlled substance, but the facts in this case do not support a conviction on the charge of distribution of a controlled substance under SDCL 22–42–2.

The facts clearly show that rather than accepting and distributing the controlled substance, Sondreal rejected the controlled substance because of poor quality. This cannot constitute "distribution." In fact, rejection is the antithesis of acceptance and distribution. The defect in the majority's thinking is clear when one considers SDCL 34–20B–1(1) "Administer" and SDCL 34–20B–1(8) "Dispense," both of which require transfer to the ultimate user. Obviously, the words "Distribute" "Deliver" and "[D]elivery" mean something more than the receipt and rejection of the drugs. Rejection and return of the drugs does not constitute a "transfer" of the drugs within the meaning of SDCL 22–42–2. The activity the statute criminalizes is the dissemination of controlled substances from supplier to user. Although Sondreal intended to pass the drugs on toward the user, he did not do so. In fact, Hanson distributed to Sondreal and Sondreal rejected that delivery. Therefore, this conviction should not stand on the distribution charge.