IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. PHIPPS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JORDAN A. PHIPPS, APPELLANT.

Filed December 16, 2025.    No. A-25-255.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Jim K. McGough, of McGough Law, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, BISHOP, and FREEMAN, Judges.

FREEMAN, Judge.

### INTRODUCTION

Jordan A. Phipps appeals his plea-based conviction of motor vehicle homicide (DUI/ODR) entered by the district court for Douglas County. He argues that the district court imposed an excessive sentence and that he had ineffective assistance of counsel. For the reasons explained below, we affirm.

### BACKGROUND

Samuel Rohl was heading home in his car when he was struck by Phipps driving at over 100 miles per hour. Rohl was pronounced deceased at the scene, leaving behind a wife and 4-month-old child. Phipps was speeding away from having hit an occupied vehicle when he failed to maintain his lane. Phipps was intoxicated, with his blood alcohol content over three times the legal limit. He had ordered alcoholic drinks at a bar for him and his girlfriend but drank both when

his girlfriend did not arrive. Police found an opened Budweiser can and an empty Twisted Tea inside Phipps' vehicle.

At the time of the collision, Phipps was 23 years old. Growing up, Phipps was emotionally and physically abused by his father who introduced him to marijuana. Phipps was diagnosed with attention deficit/hyperactivity disorder and Tourette's Syndrome. After the collision, he was diagnosed with major depressive disorder, at one time attempting suicide. He suffered a traumatic brain injury because of the collision. Phipps had no recollection of the collision or the 2 weeks prior. He has a good relationship with his mother, is single, and has no children. He scored in the very high risk category for family.

Phipps started drinking alcohol at the age of 16, and by the time of the collision, he regularly consumed five to six beers three to four times a week. He was aware of his tendency to become intoxicated and had repeatedly used Uber or called his mother or a friend when he was unable to drive because of his intoxication. He started smoking marijuana at the age of 12, and by the time of the collision, was smoking marijuana nearly once a day. He believed that marijuana was not a problem for him because it helped him with his Tourette's Syndrome. The presentence investigation report indicated that Phipps' "ability to learn or process information could be considered affected by the level of denial and minimization he expressed regarding not only some of his criminal culpability, but also the actual negative affect that his elevated marijuana use has played in his life."

Even after the death of Rohl, Phipps admitted in his presentence investigation to using marijuana once and drinking alcohol twice. He was caught drinking alcohol both times in violation of his bond and continued to violate his bond by going to multiple bars. A protection order was filed against Phipps during the pendency of the case because Phipps had attacked a previous girlfriend multiple times while drunk and was again seen at a bar. He scored in the very high risk category for alcohol and drug problems.

In the past, Phipps paid fines for traffic offenses, including speeding, and a fine for the criminal offense of having liquor in an open container. He completed probation for several juvenile offenses, including reckless driving and felony burglary. He scored in the medium risk category for criminal history and in the low risk category for pro-criminal attitude and antisocial pattern.

Phipps is a high school graduate and has been employed. While incarcerated after the collision, he completed ten programs in areas such as restorative justice, job readiness, electrical safety, and discovering your purpose. At one point, he was attending around five AA meetings a week. He scored in the medium risk category for education and employment.

Due to the collision, Phipps was charged with motor vehicle homicide (DUI/ODR), a Class IIA felony. As part of a plea agreement to dismiss an additional Class IIA felony manslaughter charge, Phipps pled no contest. He entered the plea freely, knowingly, intelligently, and voluntarily. And he appeared genuinely remorseful for his actions. Phipps understood that the maximum penalty for a Class IIA felony was up to 20 years in prison. The district court considered his age, mentality, background, cultural background, and criminal record in deciding the sentence. Phipps was also sentenced for attempted tampering of a witness and three counts of violation of a protective order, due to his actions months after the collision. In consideration of how the collision occurred, the impact his actions had, and his conduct during the pendency of the case, including

the bond violations, the district court sentenced Phipps to 19 to 20 years in prison for motor vehicle homicide (DUI/ODR) and revoked his driver's license for 15 years. Phipps appeals.

## ASSIGNMENTS OF ERROR

Phipps argues that (1) the district court imposed an excessive sentence and (2) his counsel was ineffective for failing to present an expert report or testimony regarding how marijuana and alcohol use impacted Phipps' brain development and functioning.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Geller*, 318 Neb. 441, 16 N.W.3d 365 (2025).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. See *id.*

## ANALYSIS

*Excessive Sentence.*

Phipps argues that the district court failed to consider mitigating factors in its sentence.

A Class IIA felony is punishable by a maximum of 20 years' imprisonment. See Neb. Rev. Stat. § 8-105(1) (Cum. Supp. 2024). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Sutton, supra.* In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* In deciding the appropriate sentence, a sentencing court can account for the fact that the defendant received a substantial benefit from a plea bargain agreement. *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025).

Phipps claims that the district court did not consider his young age, the abuse he suffered, his physical and mental health, his remorse, and the steps he is taking to address his alcohol problem. However, the district court stated it considered the relevant factors of his age, mentality, background, cultural background, and criminal record in its sentence of Phipps and acknowledged Phipps' remorse. Even though he completed several programs to help him address his problems,

these were completed while he was incarcerated. He also received a benefit from a plea agreement that dismissed an additional Class IIA felony.

Here, the district court considered that Phipps became intoxicated at a bar and chose to drive even though he had prior experience calling for a ride. He sped away at over 100 miles per hour after hitting a vehicle and then collided with a young father who was instantly killed. He had driving violations in the past and scored in the very high risk category for alcohol and drug problems. Phipps admitted to drinking alcohol twice and using marijuana once in the months following the collision. Also, after the collision, Phipps' ex-girlfriend sought a protection order against him, detailing violent attacks Phipps initiated while he was drunk, which included at least one appearance at a bar. Therefore, the district court did not abuse its discretion in its sentence imposed within the statutory limits because it relied on reasonable evidence surrounding the seriousness of Phipps' actions.

*Ineffective Assistance of Counsel.*

Phipps argues that his counsel was ineffective during the sentencing hearing because his counsel failed to offer an expert report or testimony regarding how alcohol and marijuana use affected Phipps' brain development and functioning.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. See *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability of prejudice from ineffective assistance of counsel is a probability sufficient to undermine confidence in the outcome. *Id.* Courts may examine performance and prejudice in any order and need not examine both prongs if the defendant fails to demonstrate either. *Id.*

In *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015), the appellant claimed his counsel was ineffective for failing to include certain depositions for sentencing. According to the appellant, the depositions would have helped to demonstrate how some of the witnesses were inconsistent in their stories. See *id.* The depositions were not part of the record. See *id.* Regardless of what the depositions would have revealed, the court did not base its sentence on the credibility of the witnesses. See *id.* The depositions were also cumulative to other information the court received regarding the witnesses' inconsistent statements. See *id.* Therefore, the Nebraska Supreme Court found that appellant's counsel was not ineffective for failing to include certain depositions for sentencing. See *id.*

Similarly, Phipps claims that his counsel was ineffective for failing to include an expert witness's testimony or report for sentencing. Phipps further contends the testimony or report would have provided information regarding how alcohol and marijuana use at a young age affected Phipps' decision-making abilities and impulse control. In support of his claims, Phipps impermissibly hyperlinks general studies regarding the effects of alcohol and marijuana use in his brief. See brief for appellant at 19-20. Except for official court documents and Nebraska statutes

and rules, hyperlinking is not permitted. See Neb. Ct. R. App. P. § 2-103(5) (rev. 2024). These studies are not otherwise contained in the record, and this court has not reviewed them.

Regardless of what any expert testimony or report would have revealed, it is unlikely that the district court would have imposed a different sentence. The district court relied on how the collision occurred at over 100 miles per hour after Phipps was speeding away from previously hitting another occupied vehicle; the impact it had on a young family who lost its father; and Phipps' continued alcohol abuse during the pendency of the case.

Phipps voluntarily drank alcohol at a bar and knew how to ask for a ride when intoxicated because he had done so before. Where one deliberately pursues a course to voluntarily become intoxicated, as here, particularly where defendant was fully aware of his propensity to violate the law when drunk, there is little that can be said in his behalf in mitigation of the crime or the punishment. *State v. Turner*, 221 Neb. 852, 381 N.W.2d 149 (1986) (citing *State v. Gamron*, 186 Neb. 249, 182 N.W.2d 425 (1970)). The lives and property of the public are entitled to protection against the criminal conduct of those who become voluntarily intoxicated. *Id.*

And like *State v. Casares, supra*, there was cumulative information in the record regarding how alcohol and marijuana use affected Phipps' brain development and functioning. The record is clear the district court considered Phipps' age, mentality, and background in its sentence. The district court knew that Phipps started smoking marijuana at age 12 and drinking alcohol as early as age 16. The district court also knew that Phipps' "ability to learn or process information could be considered effected," namely by his elevated marijuana use.

An expert witness regarding how alcohol and marijuana use affected Phipps' brain development and functioning would not likely have changed the outcome of the sentence.

CONCLUSION

We conclude that the district court did not abuse its discretion in imposing a sentence within the statutory limits that was supported by reasonable, admittable evidence and that Phipps was not prejudiced by ineffective assistance of counsel.

AFFIRMED.